432 F.2d 956
 2 Empl. Prac. Dec. P 10,321
 MESCALERO APACHE TRIBE, an Indian Tribe duly organized under
the laws of the United States of America, Eugene
Klinekole, Charles Smith, Jr.,
Plaintiffs-Appellants,
v.
Walter J. HICKEL, Secretary of the Interior, U.S. Department
of Interior,Louis R. Bruce, Commissioner of Indian Affairs,
E. M. Davidson, AlbuquerqueArea Personnel Officer, Bureau of
Indian Affairs, Defendants-Appellees.
 No. 40-70.
 United States Court of Appeals, Tenth Circuit.
 Oct. 5, 1970.
 
 Reid P. Chambers, Washington, D.C. (George E. Fettinger, of Fettinger, Bloom & Overstreet, Alamogordo, N.M., Stuart J. Land and F. Browning Pipestem, of Arnold & Porter, Washington, D.C. were with him on the brief) for appellants.
 Carl Strass, Dept. of Justice, Washington, D.C. (Shiro Kashiwa, Asst., Atty. Gen., Victor R. Ortega, U.S. Atty., John A. Babington, Asst. U.S. Atty., Albuquerque, N.M., and George R. Hyde, Dept. of Justice, Washington, D.C., were with him on the brief) for appellees.
 Lee J. Sclar (George F. Duke, Richard B. Collins, Jr., and Robert J. Donovan, Berkeley, Cal., were with him on the brief) for California Indian Legal Services, Inc., amicus curiae.
 Before LEWIS, Chief Judge, and PICKETT and HICKEY,* Circuit judges.
 LEWIS, Chief Judge.
 
 
 1
 This case, as one of first impression, questions the extent of the employment preference with the Bureau of Indian Affairs (B.I.A.) given by statute to Indians. Specifically, we are asked to decide whether the preference in appointment, established by 25 U.S.C. 44-47, 472, comprehends similar preferential treatment to Indians when agency reductions in force are made.[1] Plaintiffs-appellants Klinekole and Smith instituted this action in the United States District Court for the District of New Mexico whereby they sought mandatory injunctive relief requiring their reinstatement as employees of the Mescalero Agency, an adjunct of the B.I.A. Jurisdiction of the controversy was accepted by the District Court for the District of New Mexico presumably under 5 U.S.C. 704.[2]
 
 
 2
 According to the stipulations of fact, Klinekole, a former caretaker, and Smith, a building repairman, had been separated from their jobs with the Mescalero Indian Agency within the B.I.A. pursuant to civil service and agency regulations. Both appellants were one-quarter Indian or more and affiliated with the Mescalero Tribe, Smith by marriage. At the time the reduction in force was carried out, during June 1969, Klinekole and Smith were classified 'career-conditional' employees, signifying less than three years' continuous service with the B.I.A.; the vacancies created by their separation were filled by non-Indian 'career' employees, or those with the requisite three-year tenure. Appellants were thus separated from the service because their tenure status was inferior to that of other affected employees.
 
 
 3
 After a combined preliminary and final hearing on the issuance of the injunctions, the court below dismissed the action on the dual grounds that 25 U.S.C. 44-47, 472, are inapplicable to reductions in force and that, in any event, appellants had failed to exhaust their administrative remedies.
 
 
 4
 This is not a case where administrative proceedings are specifically provided by statute and appellants' basic contention is that the B.I.A. has exceeded its statutory authority rather than misapplied a valid regulation. No facts are in dispute, and the determinative issue-- whether the B.I.A. can discharge qualified Indians while retaining non-Indians in the same jobs-- is solely a matter of statutory interpretation. The resolution of that issue requires neither administrative expertise nor the exercise of discretion. Since administrative appeals could only provide additional statutory interpretations, which would not significantly aid in judicial review, we can see no compelling reason for postponing a decision on the merits. See McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194; Skinner & Eddy Corp. v. United States, 249 U.S. 557, 562, 39 S.Ct. 375, 63 L.Ed. 772; Pan Am. Petroleum Corp. v. Pierson, 10 Cir., 284 F.2d 649, 656-657, cert. denied 366 U.S. 936, 81 S.Ct. 1661, 6 L.Ed.2d 848. We conclude there is no jurisdictional block to review and pass to a consideration of the merits.
 
 
 5
 None of the three statutes relied on by appellants deals directly with reductions in force.[3] However, appellants point to the phrase 'shall be employed * * * where practicable * * *' as contained in 44, and the word 'employment' in 46 and urge that the statutes contemplate a continuing relationship. We consider such an interpretation to be strained and untenable. A similar argument cannot be extended to 472 for in this section the preference is specifically limited to 'appointment to vacancies.' One illustration of how these popularly-termed 'Indian preference laws,' pertinently 472's waiver of civil service laws, create an Indian preference in appointment is that a non-veteran Indian of quarter blood, such as either appellant in this case, will be given preference over a non-Indian veteran competing for the same position within the B.I.A. Presumably, civil service preferences would come into play again in favor of an Indian veteran applying for the same appointment sought by a non-veteran Indian. See Memorandum of the Solicitor, Department of the Interior, 'Appointment of Indian Positions Restricted to Veterans,' June 4, 1954 n. 6. Since these applications of the subject statutes are clearly proper and within the clear and precise wording of the statutes we would ordinarily end our inquiry at this point with a simple indication of agreement with the government's contention that the statutes are unambiguous and cannot be used to afford appellants a remedy. But the government's flat contention contains overtones of the age-old complaint of the 'forked tongue' as applied to Indians.
 
 
 6
 For many years the government has applied the subject employment preference statute as having limited effect in matters of reduction in force. This policy is reflected in B.I.A.'s Indian Affairs Manual which provides in pertinent part:
 
 
 7
 .1 Policy. The Bureau will endeavor to reassign employees facing reduction in force to positions in which they will render the most efficient and satisfactory service. Reduction in force actions will be made in accordance with rights of career employees in observance of the Veterans' and Indian preference laws and the regulations established by the Civil Service Commission. The term career or career conditional used in this chapter will apply to employees in the competitive service and Indian preference eligibles in the excepted service. . 2 Indian Preference. Employees eligible for Indian preference are those with 1/4 or more degree Indian blood, regardless of the type of appointment they have received and those employees with lesser degree of Indian blood to whom preference was extended at the time of appointment. There are a few individuals in the latter category who were appointed in earlier years, before one-fourth degree Indian blood was required for preference in employment. In applying the retention preference regulations in reduction in force actions, employees with Indian preference shall be placed above all competing non-Indians in the same subgroup, regardless of whether the positions are in the competitive or excepted service. In observing reassignment rights of employees with Indian preference, those individuals, for example, in subgroup IA-I have reassignment rights within the Bureau only to other positions for which they are qualified in other competitive levels when occupied by employees in subgroup I-B or lower. 44 BIAM 351.1-2.
 
 
 8
 This policy in practical effect and as testified to by two government witnesses would have allowed Klinekole and Smith, both non-veterans, to retain their employment over non-Indian veteran employees had plaintiffs been in the same subgroup, i.e. had they had career status. Apparently this policy and its result is an attempt to give some recognition to the requirements of statutes pertaining to civil service reductions in force. 5 U.S.C. 3501, 3502 provide for civil service preferences when reductions in force are made. 'Tenure of employment' and 'military preference' are two classifications which 3502 directs should be given effect in the hierarchy of preferences set up by the Civil Service Commission. By regulation the B.I.A. is required to classify according to tenure employees in 'excepted' service, 5 C.F.R. 351.502, to which Indian appointees in B.I.A. agency service are subject. 5 C.F.R. 213.3112(a) (7). A fair interpretation of the civil service reduction preference statutes and the cited regulations is that subgrouping based on tenure, with the resultant 'career' and 'career-conditional' classifications, is civil service classification. A government witness testified that civil service regulations, along with those of the agency, controlled reduction questions. In the same vein the government has argued that 25 U.S.C. 472, quoted supra, applies only to appointments and, therefore, that 3501 and 3502 generally control regarding preferences during reductions in force, thereby confining waiver of civil service requirements to 472. Yet the B.I.A. by regulation has adopted a policy of continuing Indian preferences to agency reductions in force, but only when Indians and non-Indians are in the same tenure subgroup.
 
 
 9
 In recognition of the expertise of the B.I.A. we have no quarrel with what may be the pragmatic effect of its practice of applying but a limited preference to Indians in the matter of force reduction. But to interpret the subject statutes as authorizing in some instances an Indian preference on retention of employment and to deny the same effect in other instances seems clearly to be arbitrary, and no matter how desirable, to be beyond the administrative power. Our inquiry must thus revert to one of pure interpretation of the subject statutes.
 
 
 10
 Both below and before this court, all parties have catalogued available legislative history on 472, consisting of House and Senate reports, hearings, and debates. 25 U.S.C. 44, 46, part of the Indian Appropriations Act, had no documented history prior to enactment. Our examination of the legislative history relevant to the passage of 472 supports appellants' contention that it was intended to integrate the Indian into the government service connected with the administration of his affairs.[4] Congress was anxious to promote economic and political self-determination for the Indian. Specific concern was directed to reforming the B.I.A., which exercised vast power over Indian lives but was staffed largely by non-Indians. Through the preference given to Indians by 472, it was hoped that the B.I.A. would gradually become an Indian service predominantly in the hands of educated and competent Indians.
 
 
 11
 During the thirty-six years since the passage of 472 it might be expected that this initial hope of a predominantly Indian B.I.A. would have been realized through the initial hiring preference. As the non-Indian employees retired or moved on to other jobs, competent Indians were expected to have taken their place. Unfortunately, this has apparently not happened, especially in the policy-making positions. See The Indian: The Forgotten American, 81 Harv.L.Rev. 1818, 1820 (1968)
 
 
 12
 Whether the failure results from the policies of the B.I.A. or from a lack of qualified Indian applicants is a matter of continuing concern.
 
 
 13
 Appellants now urge us to adopt an interpretation of the preference statutes that would undoubtedly further employment of Indians in the B.I.A. but at the expense of discharging an indeterminate number of non-Indians whenever there is a reduction in force. This was clearly not within the original intent of Congress. The language of 472 was specifically limited to 'appointments to vacancies' because of concern that the section as originally drafted would allow qualified Indian applicants to immediately displace 'white'[5] employees of the B.I.A. See Hearings on S. 2755 Before the Senate Comm. on Indian Affairs, 73d Cong., 2d Sess. at 32 (1934). Representative Howard, one of the sponsors of the legislation, remarked during the congressional debates that 472 'does not mean a radical transformation overnight or the ousting of present white employees.' 78 Cong. Rec. 11731 (1934).
 
 
 14
 Appellants contend that a reduction in force, when a choice must be made between displacing Indian employees or non-Indian employees, presents a substantially different situation from the ousting of non-preferred employees by Indian applicants. We disagree. Congress intended to promote Indian employment in the B.I.A. but also to provide job security for non-Indian employees by giving Indians only a preference in 'appointment to vacancies.' This security is lost if the Indian preference statutes are applied to reductions in force since inevitably all non-Indian employees would be 'ousted' by such reductions. Besides posing a threat to non-Indians now employed by the B.I.A., the loss of job security would also constitute a significant deterrent in recruiting non-Indians for B.I.A. jobs. Although qualified Indians are to be actively sought and accorded a preference in initial hiring, it may still be necessary to employ non-Indians whenever it is not 'practicable' to do otherwise. And when so hired, such employees are the 'present' employees thirty-six years subsequent to the enactment of the subject statutes.
 
 
 15
 Accordingly, we hold that the Indian preference statutes do not entitle appellants to the relief sought.
 
 
 16
 Affirmed.
 
 
 
 *
 Judge Hickey, since deceased, heard the arguments in this case but did not participate in this decision
 
 
 [1]
 The parties accept the basic constitutional validity of these statutes as an unquestioned premise for the limited issue which they here present. By considering the case in its present posture we do not give judicial comfort to that premise. No constitutional issue is before us
 
 
 [2]
 Jurisdiction was asserted under 28 U.S.C. 1331(a) (federal question), 1346(a)(2) (civil action against the United States founded on act of Congress), 1361 (mandamus), 1362 (civil action brought by Indian tribe under law of United States), and 5 U.S.C. 704 (judicial review of final, non-discretionary agency action). Clearly, 5 U.S.C. 704 was the least questionable basis
 
 
 [3]
 25 U.S.C. 44 provides:
 In the Indian Service Indians shall be employed as herders, teamsters, and laborers, and where practicable in all other employments in connection with the agencies and the Indian Service. And it shall be the duty of the Secretary of the Interior and the Commissioner of Indian Affairs to enforce this provision.
 25 U.S.C. 46 provides:
 Preference shall at all times, as far as practicable, be given to Indians in the employment of clerical, mechanical, and other help on reservations and about agencies.
 25 U.S.C. 472 provides:
 The Secretary of the Interior is directed to establish standards of health, age, character, experience, knowledge, and ability for Indians who may be appointed, without regard to civil-service laws, to the various positions maintained, now or hereafter, by the Indian Office, in the administration of functions or services affecting any Indian tribe. Such qualified Indians shall hereafter have the preference to appointment to vacancies in any such positions.
 
 
 [4]
 See generally S.Rep. No. 1080, 73d Cong., 2d Sess. at 1 (1934); Hearings on H.R. 7902 Before the House Comm. on Indian Affairs, 73d Cong., 2d Sess. at 39 (1934); Hearings on S. 2755 Before the Senate Comm. on Indian Affairs, 73d Cong., 2d Sess. (1934); 78 Cong.Rec. 9270 (remarks of Senator Hastings), 11123 (remarks of Senator Wheeler), 11727, 11729, 11731-32 (remarks of Representative Howard) (1934)
 
 
 [5]
 The choice of this adjective is not ours. This racial distinction is repetitive in the congressional debates