**C. R. MANCARI et al.,
Plaintiffs,**

v.

**Rogers C. B. MORTON, as Secretary of
the Interior, et al., Defendants.**

**Civ. No. 9626.**

United States District Court,
D. New Mexico.

June 1, 1973.

Cotter, Atkinson, Campbell & Kelsey, John M. Kulikowski, Albuquerque, N. M., for plaintiffs.

Victor R. Ortega, U. S. Atty., Albuquerque, N. M., for the Government.

James Wechsler, Crownpoint, N. M., Alan R. Taradash, Paul L. Biderman, Crownpoint, N. M., Richard B. Collins, Window Rock, Ariz., Harris D. Sherman, Sherman & Sherman, Denver, Colo., Arnold & Porter, Patrick J. Macrory, Washington, D. C., for Amerind.

Before SETH, Circuit Judge, and BRATTON and MECHEM, District Judges.

## MEMORANDUM OPINION

PER CURIAM.

This is a class action brought by the named plaintiffs on behalf of themselves and all other employees of the Bureau of

Indian Affairs who are of less than twenty-five per cent Indian blood. Plaintiffs seek to enjoin the defendants from implementing and enforcing a policy of the Bureau of Indian Affairs to give preference to persons of one-quarter or more Indian blood in initial hiring, training, promotion, and reinstatement.

Plaintiffs allege that Title 25, United States Code, §§ 44–46 and 472 (hereinafter the Indian Preference Statutes), are being improperly construed by the Secretary and the Commissioner in that these sections were meant to extend a preference to Indians in initial hiring only. Plaintiffs further allege that this expanded policy violates their rights under the Civil Rights Acts of 1964 and 1972, which rights are guaranteed them in Title 42, United States Code, § 2000e et seq., and Public Law 92–261, § 717. Finally plaintiffs allege that the Indian Preference Statutes are unconstitutional because they deprive plaintiffs of their rights to property without due process of law in violation of the Fifth Amendment to the United States Constitution.

The non-Indian plaintiffs are longtime employees of the BIA. They are teachers at the Albuquerque Polytechnic Institute, or programmers, or in computer work, or teachers in other areas. They testified as to particular training or advancements for which they had applied, and which in their opinion were denied by reason of the application of the preference policy. We find that the plaintiffs demonstrated sufficient connection with the application of the policy to bring this action for themselves and others similarly situated.

The defendants are persons occupying official positions relating to the BIA and are responsible for the application of the Acts herein concerned.

We find that there are asserted substantial constitutional questions requiring consideration by a three-judge court.

The United States Attorney, who appears for the defendants, challenges the court's jurisdiction over the subject matter. The Court of Appeals in Mescalero Apache Tribe v. Hickel, 432 F.2d 956 (10th Cir.), held that there was jurisdiction under 5 U.S.C. § 704 in that action. Here the plaintiffs assert jurisdiction under 42 U.S.C. § 2000e and 28 U.S.C. § 1346(a)(2). This could be considered under the latter statute since the action was against "Rogers C. B. Morton, as Secretary of the Interior," and against other named persons in their official capacities. As indicated, the United States Attorney has appeared as counsel for the defendants. However, we hold that there is jurisdiction under 42 U.S.C. § 2000e, and any further challenge before the Department concerned would be an idle gesture in the face of the issuance of the policy statement and its implementation by regulations and orders. The issue is not an interpretation of policy statements or their application, but is a direct challenge to the validity of the statute on which the departmental policy is based. There is thus no purpose shown why any further administrative action would serve any useful purpose. Mescalero Apache Tribe v. Hickel, 432 F.2d 956 (10th Cir.), we believe, is significant on this point although it dealt with 5 U.S.C. § 704 where no administrative machinery was expressly provided.

Defendants contend that they are directed by 25 U.S.C. § 472 to implement the policy of Indian preference. Section 472 provides as follows:

"The Secretary of the Interior is directed to establish standards of health, age, character, experience, knowledge, and ability for Indians who may be appointed, without regard to civil-service laws, to the various positions maintained, now or hereafter, by the Indian Office, in the administration of functions or services affecting any Indian tribe. Such qualified Indians shall hereafter have the preference to appointment to vacancies in any such positions."

Other statutory provisions relating to preference, although less explicit, appear at 25 U.S.C. §§ 44 and 46.

The gist of the preference policy which precipitated the challenge was embodied in Personnel Management Letter No. 72–12, issued by the Albuquerque Area Office of the BIA, which provided in part as follows:

"The Secretary of the Interior announced today he has approved the Bureau's policy to extend Indian preference to training and filling vacancies by original appointment, reinstatement and promotions. . . .

"The new policy provides as follows: Where two or more candidates who meet the established requirements are available for filling a vacancy, if one of them is an Indian, he shall be given preference in filling the vacancy. This policy is effective immediately, and is incorporated into all existing programs such as the Promotion Program. . . ."

The policy was officially announced and, as we find from the evidence that it is being carried out, applies the preference in hiring and promotions. Instances of promotional preferences were testified to by the witnesses. The policy is thus a reality, and far beyond the formative stage.

■ A preliminary issue relates to the validity of 25 U.S.C. § 472, quoted above, in view of its inclusion in the heterogeneous Indian Reorganization Act of 1934. This provision was included in the Reorganization Act together with other sections which relate to a variety of subjects. In one of the sections, now 25 U.S.C. § 478, provision is made for submission of "the Act" for acceptance or rejection by the various Indian tribes. This voting section (478) on its face would appear to make the application of section 472, with which we are here concerned, optional with individual tribes by requiring a special election of the adult members of the tribe to vote on the application of the entire Act.

The Reorganization Act was submitted and voted on and was rejected by a considerable number of tribes. This rejection and acceptance tribe by tribe creates some uncertainty, but a careful reading of the other sections, as well as a review of the Congressional history of the Act, convinces us that the elections were to be only for the purpose of accepting or rejecting sections 476 and 477 of Title 25, 48 Stat. 987–88. For example, we cannot believe that Congress intended all the Indian tribes to vote on the extension of boundaries of the Papago Reservation (section 463a, 50 Stat. 536), on the Secretary making rules and regulations for the operation and management of Indian forestry units (section 466, 48 Stat. 986), or on appropriations for vocational and trade schools (section 471, 48 Stat. 985), or on other provisions found in the Indian Reorganization Act. It is difficult to see how under any other construction the Act would be valid.

Senator Wheeler, one of the sponsors of the Reorganization Act, made the following remarks in his discussion of sections 476 and 477 of the Act:

"The third purpose of the bill is to stabilize the tribal organization of Indian tribes by vesting such tribal organizations with real, though limited, authority, and by prescribing conditions which must be met by such tribal organizations. This provision will apply only if a majority of the Indians on any Indian reservation desire this sort of organization. As a matter of fact, however, it does not change to any great extent the present tribal organization, except that when a majority of the Indians want to establish this tribal organization and extend the provisions of the bill to it, they may do so." (1934 Congressional Record, p. 11123). .

Nothing which followed in the debate or in the way of amendments suggests to us that the option of acceptance was extended to any other portion of the Act, and therefore the preference section here concerned must be held to extend to all Indians as individuals.

The issue of the proper construction of 25 U.S.C. § 472 is urged on this appeal and is a significant problem. The United States Court of Appeals for the Tenth

Circuit in Mescalero Apache Tribe v. Hickel, 432 F.2d 956, considered the application of the preference statutes to reductions in the work force of the Bureau of Indian Affairs, and held the preference not applicable. There section 472 was considered, as were sections 44 and 46 of 25 U.S.C., and references were made to the legislative history. The parties and the court were there concerned only with the particular issue at hand. There was no other issue nor a general challenge to the Act. The preference thus does not apply to reductions in the work force.

The United States District Court for the District of Columbia, in Freeman v. Morton, Civ. No. 327–71 (not yet reported), had before it the question of whether or not section 472 gave the plaintiff a preference over all non-Indian employees in the Bureau of Indian Affairs with respect to promotions, reassignments to vacant positions within the BIA, and to assignments to available training positions (the contrary position was that the preference was only as to initial hiring). The district court in Freeman held that section 472 required the preference be given in promotions and reassignments to vacant positions within the Bureau, but that it did not extend to positions in training programs.

We do not decide whether the preference is as broad as the court in Freeman v. Morton indicates. It is sufficient to permit consideration of the basic issue to observe that no one challenges the application of the preference acts to initial hiring and indeed the wording does not permit such a challenge.

We turn now to the asserted conflict between the Indian Preference Statute and the Civil Rights Acts of 1964 and 1972 (Equal Employment Opportunity Act, 1972, Public Law 92–261). As indicated above plaintiffs assert that the Indian Preference Policy adopted and implemented by the Bureau is in direct conflict with the Civil Rights Acts of 1964 and 1972, and more specifically with Title 42, United States Code, § 2000e–2 and as amended by Public Law

92–261. Plaintiffs in their challenge to the preference acts thus assert that the Bureau, by refusing to obey the Congressional mandate set forth in section 717 of Public Law 92–261, is violating the rights given them under that added section.

Section 717 provides in part as follows:

"Sec. 717. (a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, [United States Code], in executive agencies (other than the General Accounting Office) as defined in section 105 of Title 5, United States Code (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the Government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on race, color, religion, sex, or national origin."

On its face, section 717 applies to all agencies of the federal government. There is nothing in the Committee Report or in House Report No. 92–238, accompanying H.R. 1746, enacted into law as Public Law 92–261, which would indicate that the Bureau of Indian Affairs be excepted from its provisions (see 1972 U.S.Code Cong. & Admin.News, pp. 2137, 2157). Exceptions are contained in the Act, but none as to the Indians or the Bureau.

Senator Byrd of West Virginia, speaking in favor of the bill, made the following remarks:

"I do not favor special treatment or special consideration or favored employment of any individual on the ba-

sis of that person's being black or white, male or female . . . Notwithstanding what I have just said, the fact remains that discrimination in employment, on the basis of race, does exist, and discrimination against sex does persist. Wherever there is such discrimination in employment, it is violative of the Constitution of the United States. . . .

"In other words, he should rise or fall on the basis of merit, not on the basis of race or religion or sex. Every qualified individual—black, white or else—should be given an equal chance—not preferential treatment—at employment." (Congressional Record, January 26, 1972, at s. 590).

And Senator Humphrey, speaking for the bill, made the following statement:

"We must make absolutely clear the obligation of the Federal Government to make all personnel actions free from discrimination based on race, color, sex, religion, or national origin." Congressional Record, January 20, 1972, at ss. 172–173).

The United States Supreme Court, in Griggs v. Duke Power Co., 401 U.S. 424, at 430–431, 91 S.Ct. 849, at 853, 28 L. Ed.2d 158, held as to Title VII:

"Congress did not intend by Title VII, however, to guarantee a job to every person regardless of qualifications. In short, the Act does not command that any person be hired simply because he was formerly the subject of discrimination, or because he is a member of a minority group. Discriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously to discriminate on the basis of racial or other impermissible classification."

The Eighth Circuit has also held that Title VII forbids reverse discrimination.

Carter v. Gallagher, 452 F.2d 315 (8th Cir.). See also Jackson v. Poston, No. 18296, New York Sup.Ct.

■ Should section 717 of Public Law 92–261 take precedence over the Indian Preference Statutes? Although we are reluctant to hold that Congress has overridden by subsequent legislation long existing statutes without specific reference to them, we must conclude that this was done in this instance.

The Equal Employment Opportunity Act of 1972 is a clear, emphatic directive by Congress that all positions in the competitive civil service of the federal government should be filled without regard to race, religion, sex, color, or national origin. It is subject to no other interpretation, and as indicated, there were exceptions placed in it, so Congress considered limitations on its scope, but none was included as to the Bureau of Indian Affairs. Thus the several preference statutes were overridden, and the Bureau must conform to the broad sweep of section 717.

■ This is not a simple instance of a relationship of a general statute to a special subject statute which often occurs. Each statute purports to cover the same particular subject of personnel actions relating to, as section 717 described them, " . . . discrimination based on race, color, religion, sex, or national origin." One Act applies to all but some excepted bureaus or agencies and the other to the "Indian Office." This is not a sufficient difference in the scope to bring into consideration the doctrine relating to conflicts between special and general statutes. Further by the nature of the subject matter and scope, the two cannot exist side by side. See Posadas v. National City Bank, 296 U.S. 497, 56 S.Ct. 349, 80 L.Ed. 351.

■ There was no evidence introduced to show in any way that having seventy-five per cent non-Indian blood and twenty-five per cent Indian blood was in any way a job-related criterion.

Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. There was no evidence whatever presented to show any national-public purpose concerned in the preference policy as compared with the nondiscrimination statutes. There would certainly have to be some showing of these factors before defendants' arguments could be considered to support the preference statutes as an exception.

■ We do not consider that Board of County Comm'rs v. Seber, 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094, or Simmons v. Eagle Seelatsee, 384 U.S. 209, 86 S.Ct. 1459, 16 L.Ed.2d 480, led to a contrary conclusion. It is apparent that Indian tribes have been the subject of particular legislation from time to time. But this of itself is no reason for a different treatment of Indians generally. Indians as such are not considered to have rights, so far as here pertinent, different from other citizens; they are citizens and are obviously entitled to all rights, privileges, and burdens thereof.

We have not considered the challenge by plaintiffs to the constitutionality of the preference statutes. This issue involves the consideration of the reasonable governmental purpose or objective sought to be attained in creating the preferred position for certain persons having a stated percentage of Indian blood as compared to others. There was testimony as to the manner in which certain non-Indians were affected by the policy. The separate treatment was thereby established together with its impact on the individuals. The defendants had the burden of coming forward with evidence of an important governmental objective but put on no evidence directed to this matter. Under these circumstances, we could well hold that the statute must fail on constitutional grounds, but instead we hold as above described that the preference statutes must give way to the Civil Rights Acts.