Enola E. FREEMAN, on behalf of herself and all others similarly situated

v.

Rogers C. B. MORTON, Secretary of the Interior, et al., Appellants.

No. 73–1409.

United States Court of Appeals, District of Columbia Circuit.

April 25, 1974.

Argued Feb. 21, 1974.

Eva R. Datz, Atty., Dept. of Justice, with whom Wallace H. Johnson, Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, Leonard Belter, Asst. U. S. Atty., and Edmund B. Clark, Atty., Dept. of Justice, were on the brief for appellants. John A. Terry and James F. McMullin, Asst. U. S. Attys., also entered appearances for appellants.

Patrick F. J. Macrory, Washington, D. C., with whom Stuart J. Land, Washington, D. C., was on the brief, for appellees.

Before BAZELON, Chief Judge, McGOWAN, Circuit Judge, and CHRISTENSEN,* United States Senior District Judge for the District of Utah.

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

CHRISTENSEN, Senior District Judge.

This is an appeal by defendants-appellants Rogers C. B. Morton and other officials of the Bureau of Indian Affairs (BIA), from a final order of the United States District Court for the District of Columbia granting summary declaratory judgment in favor of plaintiffs-appellees, Enola E. Freeman and three other employees of BIA, "that all initial hirings, promotions, lateral transfers and reassignments in the Bureau of Indian Affairs as well as any other personnel movement therein intended to fill vacancies in that agency, however created, be declared governed by 25 U.S.C. Sec. 472 . . . ." This section, which was a part of the Indian Reorganization Act of 1934 provides as follows:

### Standards For Indians Appointed To Indian Office

The Secretary of the Interior is directed to establish standards of health, age, character, experience, knowledge, and ability for Indians who may be appointed, without regard to civil-service laws, to the various positions maintained, now or hereafter, by the Indian Office, in the administration of functions or services affecting any Indian tribe. Such qualified Indians shall hereafter have the preference to appointment to vacancies in any such positions. June 18, 1934, c. 576, § 12, 48 Stat. 986.

From the passage of the statute until the institution of this suit the Bureau had narrowly applied this preference provision by construing the term "appointment to vacancies" to mean initial hirings only. Appellees were, and presumably still are, employed by the Bureau of Indian Affairs. Each at one or more times during her employment applied for assignment to a vacant position within the Bureau, had been classified at least as "qualified" and in some cases as "well qualified" or "best qualified" and was denied the position when a non-Indian was given the assignment. In some instances the non-Indian had received a lower qualification rating than the Indian applicant. Challenging this construction as altogether too grudging, appellees asserted in this action that the Indian preference applies to all appointments whether filled from within or outside the Bureau, and whether effected through initial hiring, promotions, reassignments within the same office or lateral transfers from another office.

While this action was pending the Bureau issued a revised policy statement allowing Indians a preference not only in hiring but generally in promotions, transfers from outside the Bureau and reassignments within the Bureau which improved promotion prospects. Purely lateral reassignments within the Bureau, however, were excepted from such policy, as were promotions with respect to which the Commissioner found a "waiver" of the general policy to be in the best interest of the Bureau. Plaintiffs limited their claims for relief to a declaration of their preference rights.[1] The ruling of the district court that the Indian preference did not extend to training opportunities is not in question.[2] Neither party has attacked the preference on civil rights or constitutional grounds.[3] Furthermore, the parties

---

1. In addition to declaratory relief the amended complaint sought prohibitory and mandatory injunctions, as well as damages. For purposes of their motion for summary judgment, however, plaintiffs waived all relief other than a declaration of their preferential rights in the areas of promotion, lateral transfers and training.

2. The district court rejected appellees' claim that the preference rights included preferential designation for training assignments. Ap-

pellees took no cross-appeal. See Fed.R.App. P. 4(a).

3. During the proceedings below a three-judge court in New Mexico, not reaching the constitutional issue presented, ruled that the statute construed here was impliedly repealed by the Civil Rights Acts of 1964 and 1972 (42 U.S.C. § 2000e–2 as amended). Mancari v. Morton, 359 F.Supp. 585 (D.N.M.1973). The application of that ruling has been stayed pending appeal to the Supreme Court, where probable

agree that all of the controlling facts appear without dispute of record and that the case was ripe for resolution by summary judgment one way or another.[4] The Tenth Circuit holding that the Indian preference does not apply to reduction-in-force situations [5] has not been questioned in these proceedings. And the parties have accepted the definition of "Indians" as those of one-quarter or more Indian blood [6] as valid and as applying to each of the plaintiffs for the purposes of the statute. As a consequence of these circumstances the issues presented by the parties and to which we shall limit further discussion are narrow and apparently of first impression: [7]

I. Does 25 U.S.C. § 472 apply to transfers and reassignments within the Bureau of Indian Affairs which are purely lateral? [8]

II. Does that section allow the granting of exceptions to the preference policy with reference to promotions, as well as with respect to lateral transfers or reassignments, for exceptional administrative or management reasons?

I

■ The appellants argue that the district court's order is erroneously broad because it gives Indians preference "even as regards purely lateral reassignments . . . where a job and/or its occupant is merely relocated."

jurisdiction has been noted. 414 U.S. 1142, 94 S.Ct. 893, 39 L.Ed.2d 99 (1973). Except as it documents the shared position of all parties before this court that the Indian preference, however, it is construed to resolve the issue here, is valid, it may be more interesting than significant to note that both appellants' counsel and counsel representing appellees are asking the Supreme Court to reverse *Mancari*. See 42 U.S.L.W. 3158, No. 73–362 (1973) ; *Id.*, No. 73–364.

4. There were extensive demands for admission which were largely undenied except as they called for conclusions of law.

5. Mescalero Apache Tribe v. Hickel, 432 F.2d 956 (10th Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1195, 28 L.Ed.2d 333 (1971).

6. Employees eligible for Indian preference are those with one-fourth or more degree Indian blood, regardless of the type of appointment they have received, and those employees with lesser degree of Indian blood to whom preference was extended at the time of appointment. 44 BIA Manual 713, 1.2. It is noted in the Manual that there are a few individuals in the latter category who were appointed before the one-fourth Indian blood requirement went into effect.

7. This court's decision in Fass v. Gray, 91 U.S.App.D.C. 28, 197 F.2d 587, cert. denied, 344 U.S. 839, 73 S.Ct. 39, 97 L.Ed. 653 (1952), involved a reduction-in-force problem of veterans in the context of a significantly different statute and the rule making power of the Civil Service Commission. Mescalero Apache Tribe v. Hickel, 432 F.2d 956 (10th Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1195, 28 L.Ed.2d 333 (1971), *supra*, also was a reduction-in-force case although involving Indians ; the court held that "appointments to vacancies" were not involved so as to in-

voke control by Section 472. Mancari v. Morton, 359 F.Supp. 585 (D.N.M.1973), *supra*, expressly excludes our problem from consideration by the following language: "The United State District Court for the District of Columbia . . . had before it the question of whether or not section 472 gave the plaintiff a preference over all non-Indian employees in the Bureau of Indian Affairs .with respect to promotions, reassignments to vacant positions within the BIA, and to assignments to available training positions . . . The district court in Freeman held that section 472 required the preference be given in promotions and reassignments to vacant positions within the Bureau . . . We do not decide whether the preference is as broad as the court in Freeman v. Morton indicates. It is sufficient to permit consideration of the basic issue to observe that no one challenges the application of the preference. acts to initial hiring and indeed the wording does not permit such a challenge." 359 F.Supp. at 589.

8. *I. e.*, movements of personnel which do not entail promotions or changes in salary, responsibility or promotion potentials, the latter element of which appellants concede also would justify considering the transfer as a promotion. We see difficulties in any such differentiation : the practical one of predicting promotional opportunity or lack of it in any shift ; the control superiors would have through judgmental or discretionary action over the application of the Indian preference, by reason of this uncertain aspect, and the opportunities for thwarting the preference itself by transfers of current non-Indian employees from positions having no available qualified Indian replacements to vacant positions for which there are qualified Indians available. These problems are reduced or eliminated by the district court ruling.

They rely upon statements in Mescalero Apache Tribe v. Hickel, 432 F.2d 956, 960 (10th Cir. 1970), *supra,* and draw particular attention to a comment that "[t]he language of § 472 was specifically limited to 'appointments to vacancies' because of concern that the section as originally drafted would allow qualified Indian applicants to immediately displace 'white' employees of the B.I.A."

But the reason *Mescalero* did not apply the Indian preference to reduction-in-force situations was simply that no "appointments to vacancies" within the contemplation of the preference statute were involved. The declaratory judgment under review here covers only "personnel movements . . . intended to fill vacancies in that [BIA] agency, however created. . . ." Under the order if no vacancies to be filled exist the preference does not apply, but if there is a vacancy to be filled, whether for initial hiring, or by or as a result of promotions, lateral transfers or reassignments in the Bureau, it does apply. We agree with the district court that this is what Section 472 means, and requires.[9]

Vague reference is made by appellants to "mere" relocations of jobs or reassignments of duties essential to efficient administration, which they imply are undesirably inhibited by the district court's judgment. It would be inappropriate for us to pursue such generalities not involved in the situations of the plaintiffs nor defined in the record, except to indicate, as did the trial court, that only appointments to vacancies are covered by the preference; readjustments in assignments or tasks not involving the creation of, or appointment to, vacancies are unaffected, unless of course these personnel adjustments are used as mere subterfuges to avoid the statute as interpreted here.

The most persuasive situation for an exception to the preference was specifically presented only after the entry of the court's order, in connection with the application for its stay:[10] circumstances dictating the transfer of a particular non-Indian employee because of problems beyond his control or when his safety or continued effectiveness is threatened, for example. Even though such a necessity may be thought not to justify disregard of the preference in any lateral transfer to an existing vacancy, appellants argue that at least an exchange of positions would be proper to meet such an emergency. This lateral swapping of positions would bring into more acute question the meaning of "vacancy" as well as "appointment". Where two employees of identical status, with the approval of their superiors, merely exchange positions it is suggested by appellants that there would be no vacancy with respect to either position. Of course if this device were to be employed to shift an employee contemplating retirement or promotion from a position having an available Indian replacement to a position (on a different reservation for example) having only non-Indian replacements available, obviously the intent of the statute under any view would be defeated. Yet appellees say that the BIA should be permitted to utilize in good faith this theory of exchange of positions without applying the Indian preference.

---

**9.** "A 'vacancy' is a 'vacancy' ", its opinion observed, "no matter how created. Congress drew no distinction—as it could easily have done had it so intended."

**10.** The McKune affidavit in support of the request for a stay on appeal stated: "Lateral reassignment of Bureau of Indian Affairs' employees to vacant positions are frequently made because of a breakdown in relationships between an employee at the agency level and the tribes that he serves. Such breakdowns usually result from conditions over which an employee has no control. These situations require that the employee be moved as quickly as possible to avoid further alienation of the tribe, and occasionally, the threat of physical violence to the employee and his family. When a qualified Indian candidate is available for the position to which a non-Indian employee may be reassigned under these circumstances, it becomes impossible to move the non-Indian employee."

■■ As tempting as this continued softening of the statute may appear, we cannot approve it. That would require an unacceptable torsion of the term "vacancy" or the word "appointment", or both. Whether a vacancy exists depends upon whether a position is vacant and susceptible of being filled, not upon how it is filled. According to appellants' argument, for example, if an employee in office A should retire, his former position would be vacant only if his replacement were either promoted to that position or hired from outside the BIA to fill it; the determination of whether a vacancy occurs would be delayed until the vacancy no longer existed. We believe Judge Corcoran correctly reasoned that when a position is open, needing to be filled, it is vacant in the contemplation of the statute, and if the position is filled by transferring to it an employee from a position of similar status somewhere else within the BIA, that employee's former position also becomes a vacant position to be filled with due regard for the Indian preference.

Appellants' approach to the word "appointment" is to say that the word has come to mean, through custom and usage in civil service contexts, "initial hiring from outside", and it is suggested that this was the meaning intended by Congress in using the word in the statute. It is interesting to note in passing, as the record indicates, that Civil Service practice now accepts promotions as "appointments". But here we are not dealing with Civil Service application but practices expressly intended to depart from them. The Secretary is directed "to establish standards . . . for Indians who may be appointed without regard to civil-service laws . . . ." Furthermore, to concede, as

appellees do, that "appointment" refers not only to initial hiring, but also to promotions, while maintaining that the term does not include lateral transfers, would be to only selectively accept the contended-for meaning, but largely to reject it to coincide with previously announced policies and the exigencies of this suit.

■ Except in extremely exceptional circumstances a non-Indian would be transferred out of an existing position only if, taking into consideration the Indian preference, he could fill legally another vacancy because of the unavailability of a qualified Indian. If he were thus laterally transferred, then his former position would become vacant, subject to being filled also in a manner consistent with the Indian preference. To bend this interpretation of the statute in an effort to accommodate its contrary terms to extraordinary situations envisaged by appellants would not be justified. Many administrative adjustments already have been necessary, and more should have been made earlier, to achieve the purposes and mandate of the law. If there are no reasonable administrative or management alternatives to violation of the mandated preference for meeting the situations discussed—and the record falls far short of demonstrating that there are not—the problem is a legislative and not a judicial one. In view of the legislative history it does not appear likely that it will be weakened by Congress for insubstantial reason; more to the point, it is not within our province to do so at all.

Relevant legislative history disclosed a congressional intent actively and positively to establish, through an orderly process, Indian control of Indian services.[11] True, Congress did not envi-

---

11. "The result [of present civil service rules] has been that the Indians have been given no opportunity to handle their own affairs or to be trained in their own affairs. This bill, we think, gives them the opportunity to which they are entitled . . . . [T]o make the In-

dians the principal agents in their own economic and racial salvation and . . . progressively reduce and largely decentralize the powers of the Federal Indian Service." Memorandum on S. 2755 by John Collier, Commissioner for Indian Affairs, reprinted in

sion the mass termination of all non-Indian employees,[12] but there can be little doubt that traditional civil service security for non-Indians in the Indian service was deliberately subordinated to the objectives of the Indian preference.[13]

We conclude that the district court correctly determined the reach of Section 472.

## II

Even assuming, as we hold, that the Indian preference applies to lateral transfers in connection with which vacancies are to be filled, appellants contend that the Commissioner of Indian Affairs has a discretion to make limited exceptions with reference to lateral transfers, as well as promotions when this is expressly found to be in the best interests of the Bureau.[14] The existing administrative interpretation to this effect, the appellants assert, is entitled to great weight in view of such cases as Udall v. Tallman, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). To the contrary, we consider appellants' contention weakened by the fact that shortly before its present position was taken it was Bureau policy not to recognize promotions as falling within the purview of Section 472 at all. The contention is rendered suspect by the illogic of reading exceptions into the statute with regard to promotions and applying an inflexible rule concerning initial hirings,[15] is further thrown into question by a certain confusing ambivalence in appellants' position even during the final hearing below,[16] and is dissipated by a

Hearings on S. 2755 Before Senate Committee on Indian Affairs, 73d Cong., 2d Sess., 1, 19 (1934).

"The definite goal [of the Act] is to have Indians eventually handling everything. . . ." Testimony of Commissioner Collier, Senate Hearings, 322.

"Indian progress and ambition will be enormously strengthened as soon as we adopt the principle that the Indian service shall gradually become, in fact as well as in name, an Indian service predominantly in the hands of educated and competent Indians." Rep. Howard, 78 Congressional Record 11731 (1934).

"[Section 472] directs the Secretary of the Interior to establish the necessary standards of health, age, character, experience, knowledge and ability for Indian eligibles and to appoint them without regard to civil service laws . . . This provision in no way signifies a disregard of the true merit system, but it adapts the merit system to Indian temperament, training and capacity." Id.

12. "This does not mean a radical transformation overnight or the ousting of present white employees. It does mean a preference right to qualified Indians for appointments to future vacancies in the local Indian field service and an opportunity to rise to the higher administrative and technical posts." Id.

13. " . . . [W]e must not blind ourselves to the fact that the effect of this bill if worked out would unquestionably be to replace white employees by Indian employees, I do not know how fast, but ultimately it ought to go very far indeed." Comm'r Collier, Hearings on H.R. 7902 Before House Committee on Indian Affairs, 73d Cong., 2d Sess., 39 (1934).

14. " . . . It is the policy for promotional consideration that where two or more candidates who meet the established qualification requirements are available for filling a vacancy, if one of them is an Indian, he shall be given preference in filling the vacancy. In accordance with the policy statement approved by the Secretary, the Commissioner may grant exceptions to this policy by approving the selection and appointment of non-Indians, when he considers it in the best interest of the Bureau." 44 BIA Manual 335, 3.1 (as amended June 23, 1972).

15. Appellants assure us in their brief that "it is not contended that there is discretion to make exceptions as regards initial hiring" but do not attempt to reconcile this long standing position with their view of discretion as to promotions, although they now concede in general that promotions are covered by the Section.

16. On June 22, 1972, Secretary Morton expanded the recognition of preferences to promotions and training. By December 8, 1972, when the motions for summary judgment came before the district court the position of the defendants was modified; · they apparently contended that while the Indian preference could be applied by the Bureau to promotions, such application was not required but that the Bureau could accommodate the preference to special circumstances justifying exceptions, as was their contention concerning lateral assignments. In the course of the argument below they then seemed to withdraw somewhat from the concessions of that statement by arguing that the statute did not necessarily require the preference to be applied in cases of promotion but it may be "extended administratively

comparison of the provisions of prior Indian preference statutes with those of the act controlling in the circumstances of this case.[17] As pointed out by Judge Corcoran, the controlling statute does not say the " 'Indians . . . *may* have preference'. It says: ' . . . qualified Indians *shall* hereafter have . . . preference' ", and "if Congress had intended to write discretionary power into the language of Sec. 472 it would have done so expressly . . . One need only look at various Indian preference statutes to recognize that Congress was well aware of the distinction between discretionary and mandatory action."

■■ Any conflicting administrative interpretation to the contrary must yield to the clear provisions of the act. Even though some ambiguities might be perceived under certain situations they should be resolved, reason permitting, in favor of the Indians. Choate v. Trapp, 224 U.S. 665, 32 S.Ct. 565, 56 L.Ed. 941 (1912).[18] But ambiguities, as has been pointed out, are largely confined to the shifting position of the appellees and their predecessors who, in administering a statute designed in 1934 to progressively correct a situation where there was a smaller proportion of Indians in the BIA then than there was in 1900,[19] have achieved little more than the old ratio during the intervening forty years.[20] All of these circumstances are at least as persuasive as those in Morton v. Ruiz, 415 U.S. 199, 94 S.Ct. 1055, 39

---

into the area of promotions", and that non-Indians "may be promoted other than as a last resort." Later in the argument appellants' counsel argued generally that Congress did not intend to cover promotions as distinguished from initial hiring, and finally the claim seemed to be that while the preference statute did generally apply to promotions and lateral assignments, as well as initial hiring, a discretion resided in the Bureau to make exceptions in cases of administrative convenience or necessity. Counsel for appellants then said: "In a situation where selecting someone who is qualified but whose qualifications simply don't match someone else's and where a program might be jeopardized, the commissioner may make an exception; but, virtually, that is it. A qualified Indian gets preference for promotion." Later counsel for appellants said: "With respect to promotion we are saying the statute says vacancies, it must apply across the board . . . Now in the area of training . . . the statute says vacancies; it is inapplicable to training."

17. 25 U.S.C. § 44, originally enacted in 1894, 28 Stat. 313, provided that in the Indian Service Indians shall be employed as herders, teamsters, and laborers, "and. where practicable in all other employments in connection with the agencies and the Indian Service. . . ." Section 45, derived from the Act of June 30, 1834, 4 Stat. 737, provides that in all cases of the appointments of interpreters or other persons employed for the benefits of the Indians, a preference shall be given to persons of Indian descent, "if such can be found, who are properly qualified for the execution of the duties." Section 46, derived from the Act of May 17, 1882, 22 Stat. 88 provides that "[p]reference shall at all times, as far as practicable, be given to Indians in the employment

of clerical, mechanical, and other help on reservations and about agencies. In contrast, Section 472, the most recent Congressional mandate on the subject, provides that the Indians involved here, without regard to Civil Service laws "shall hereafter have the preference to appointment to vacancies. . . ."

18. "But in the government's dealings with the Indians the rule is exactly the contrary. The construction, instead of being strict, is liberal; doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith. This rule of construction has been recognized, without exception, for more than a hundred years. . . ." 224 U.S. at 675. See also Choctaw Nation v. Oklahoma, 397 U.S. 620, 631, 642, 90 S.Ct. 1328, 25 L.Ed.2d 615, (1970) (interpretation of treaties), and Haley v. Seaton, 108 U.S.App.D.C. 257, 281 F.2d 620, 623 (1960) (interpretation of executive orders).

19. "Thirty four years ago, in 1900, the number of Indians holding regular positions in the Indian Service, in proportion to the total positions was greater than it is today." (Memorandum on S. 2755 submitted to the Senate Committee on Indian Affairs by John Collier, Commissioner of Indian Affairs, reprinted in Senate Hearings, *supra*.)

20. The record indicates that Indians comprised 51%. of the total number of employees in 1941 but that this percentage decreased to 48% in 1969. In 1970 only a little more than half of all employees were Indians and the majority of these were employed in the lower ranking jobs.

L.Ed.2d 270 (1974), against control of judicial interpretation by administrative treatment.[21]

In oral argument appellants' counsel suggested that the word "preference" connoted "a choice" according to some dictionary definition or rulings in other context. It was implied that this "choice" was to be made by the Commissioner. We reject this play on words, and return to the clear meaning of the Act in context with its purpose, history and wording—qualified Indians, not the Commissioner, have a right to the preference in appointments to vacancies. The statute makes the choice.

In Mescalero Apache Tribe v. Hickel, 432 F.2d 956, 959–960 (10th Cir. 1970), cert. denied, 401 U.S. 981, 91 S. Ct. 1195, 28 L.Ed.2d 333 (1971), Chief Judge Lewis, writing for the court, recognized that the government's position contained "overtones of the age-old [Indian] complaint of the 'forked tongue' . . . " and that the objective of Section 472 for the BIA to "gradually become an Indian service predominantly in the hands of educated and competent Indians" was not being realized. That court felt constrained to hold that the Indian preference did not apply to reductions-in-force because "no appointments to vacancies" were involved. Accepting the rationale of *Mescalero* as applied to the facts there, as we have, and that the promotions and lateral transfers involved in the case before us do involve appointments to vacancies, as we must, for us to hold that the Indian preference established by Section 472 need not be observed if it is determined impractical to do so by the Commissioner, notwithstanding, as we have noted, that Section 472 was intended by the Congress to change prior statutes which

theretofore had granted a preference only "insofar as practicable", would render understandable a disinterment of the ancient grievance against the duality of deceit to which the Indian race so long reacted and which it was to be hoped had been laid to rest by considerate modern legislation, including Section 472. We conclude that this section means what it says, as the trial court determined.

The partial stay heretofore granted[22] is vacated and the judgment and order of the district court affirmed.

---

21. "We have recognized that the weight of an administrative interpretation will depend, among other things, upon 'its consistency with earlier and later pronouncements' of an agency. In this instance the BIA's somewhat inconsistent posture belies its present assertions. In order for an agency interpretation to be granted deference it must be consistent with the congressional purpose." (Citations omitted.)

22. The district court refused any stay of its order, but upon application of appellants we allowed a stay *pendente lite* but limited to the effect of the order upon lateral transfers.