734 F.2d 1359
 34 Empl. Prac. Dec. P 34,433
 Lillian N. PRESTON, for herself and all others similarly
situated, Plaintiff-Appellee,
v.
Margaret HECKLER, Secretary of Health and Human Services, et
al., Defendants-Appellants.
Lillian N. PRESTON, Plaintiff-Appellee,
v.
Margaret M. HECKLER, Secretary of United States Department
of Health and Human Services, et al.,
Defendants-Appellants.
Lillian PRESTON, for herself and all others similarly
situated, Plaintiffs-Appellants,
v.
Margaret HECKLER, Secretary of Health and Human Services, et
al., Defendants-Appellees.
 Nos. 83-3732, 83-3809 and 83-3844.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 8, 1983.
Decided June 7, 1984.
 
 William B. Schendel, Daniel L. Callahan, Fairbanks, Alaska, for plaintiff-appellee.
 Marleigh D. Dover, U.S. Dept. of Justice, Washington, D.C., for defendants-appellants.
 Appeal from the United States District Court in the District of Alaska (Fairbanks).
 Before SNEED, NELSON, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 The district court held that the Secretary of the Department of Health and Human Services failed to comply with the Indian Preference Act (section 12 of the Indian Reorganization Act, ch. 576, 48 Stat. 986 (1934)). In so holding, the district court concluded that the Act requires the Secretary to adopt standards for evaluating the qualifications of Indians for employment in the Indian Health Service that are separate and independent from the generally applicable civil service criteria. We agree.
 
 
 2
 Plaintiff Lillian Preston is an Athabascan Indian who has been employed since 1975 by the Indian Health Service as a medical records technician. The Indian Health Service, a federal agency under the supervision of the United States Department of Health and Human Services, provides health services to Indians. The plaintiff applied for a position as a medical social worker. She was notified that her application was denied because she did not have a masters degree in social work and therefore did not satisfy the civil service requirements for the position.
 
 
 3
 After exhausting all administrative remedies, the plaintiff brought this class action challenging the criteria used by the Department in selecting employees for the Indian Health Service. She alleged that the Secretary's use of the civil service criteria to evaluate the qualifications of Indians and her failure to promulgate separate, independent standards for Indians violated the Indian Preference Act. She sought declaratory relief to that effect as well as injunctive relief requiring the Secretary to define, without regard to civil service standards, the eligibility criteria for all Indian Health Service positions.
 
 
 4
 After certifying the class, the district court held that the Secretary failed to comply with the requirements of the Indian Preference Act and granted summary judgment. The district court held that the Secretary's failure to comply with the Act constituted a continuing abuse of discretion in violation of section 10(e) of the Administrative Procedure Act, 5 U.S.C. Sec. 706(2)(A) (1982). It remanded the case to the Secretary to establish standards, in compliance with the Indian Preference Act, for evaluating the qualifications of Indians for employment in the Indian Health Service. See Preston v. Schweiker, 555 F.Supp. 886, 892 (D.Alaska 1983).
 
 
 5
 On appeal, the Secretary argues that (1) the plaintiff did not have standing to bring the claim; (2) the district court erred in interpreting the Indian Preference Act and, even assuming the correctness of the district court's interpretation, in holding that the Secretary did not comply with the requirements of the Act.
 
 STANDING
 
 6
 The Secretary alleges that Preston lacked standing to challenge the Secretary's conduct because she did not suffer the requisite "injury in fact" under article III of the Constitution. The plaintiff disagrees. She contends that the Secretary's failure to adopt separate and independent standards for Indians, as required by the Indian Preference Act, precluded her from being considered for the medical social worker position. That, she says, is enough to support her claim of standing.
 
 
 7
 Under article III, federal courts do not have jurisdiction over a claim unless there is an "actual case or controversy." The standing doctrine is one component of the case or controversy requirement. See, e.g., Scott v. Rosenberg, 702 F.2d 1263, 1267 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). The policy concern behind the standing doctrine is that each party have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of the issues upon which the court so largely depends." Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).[1] An essential element of the standing requirement is that "the plaintiff ... show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607, 60 L.Ed.2d 66 (1979) (citations omitted).[2]
 
 
 8
 The Supreme Court recently restated the test for standing under article III:
 
 
 9
 at an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," ... and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision."
 
 
 10
 Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (citations omitted; footnote omitted); see McMichael v. County of Napa, 709 F.2d 1268, 1269-70 (9th Cir.1983).
 
 
 11
 The test for standing under a statute may be more rigorous but not more lenient than the article III requirements. "Neither the Administrative Procedure Act, nor any other congressional enactment, can lower the threshold requirements of standing under" article III. Valley Forge, 454 U.S. at 488 n. 24, 102 S.Ct. at 766 n. 24 (citing Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)). Thus, a plaintiff who meets a valid standing provision of a statute necessarily meets the requirements for standing under article III.
 
 
 12
 Preston alleges that the Secretary's failure to comply with the law violates the Administrative Procedure Act (APA). The statutory standing requirement for challenging the conduct of a federal agency under the APA is set forth in section 10(a) of that Act, 5 U.S.C. Sec. 702 (1982).[3] In Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970), the Court held that in order to meet the standing requirement of section 10(a) a plaintiff must allege "that the challenged action has caused him injury in fact, economic or otherwise;" in addition, "the interest sought to be protected by the complainant [must] arguably [be] within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Subsequently, the Court said that Data Processing includes a requirement that the injury be "redressable by the court."[4]
 
 
 13
 Data Processing recognized that article III standing is a prerequisite to standing under the APA and, before considering the question of standing under the APA, determined that the article III requirements of standing were satisfied. Thus the test announced in Data Processing was one that the Court deemed to be in compliance with the minimum requirements for standing under article III. Moreover, the Data Processing test is entirely consistent with Valley Forge 's recent restatement of those minimum requirements.[5] Thus, a plaintiff who meets the Data Processing test in cases arising under the APA satisfies the minimum article III requirements as restated in Valley Forge.
 
 
 14
 Valley Forge also refers to "prudential principles" that affect the question of standing. Prudential principles are judge-made rules. They are additional criteria to those compelled by article III. Like the other elements we have discussed, they are directed toward ensuring that there is a real controversy over an actual injury. However, prudential principles differ from article III requirements in important respects. Prudential principles do not constitute "limitation[s] on judicial power," Valley Forge, 454 U.S. at 475, 102 S.Ct. at 760; they are only "factors to be balanced," id., and then only in cases in which the courts are free to weigh those additional principles. When Congress has prescribed the elements of standing under a statute, prudential principles are not applicable--except for those that may have been incorporated in the statute. "Congress may, by legislation, expand standing to the full extent permitted by Art. III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.' " Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979) (quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975)).[6]
 
 
 15
 It follows that the real issue before us is whether Preston meets the standing requirements of the APA. In order to do so, she need not demonstrate that she would have been hired if the Secretary had complied with the law. See Bryant v. Yellen, 447 U.S. 352, 367-68, 100 S.Ct. 2232, 2240-41, 65 L.Ed.2d 184 (1980) (holding under article III); Regents of the University of California v. Bakke, 438 U.S. 265, 280-81 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978) (plurality opinion) (same); Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 261-62, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977) (same). We have held previously that, when challenged agency conduct allegedly renders a person unable to fairly compete for some benefit, that person has suffered a sufficient "injury in fact" and has standing under the APA. Glacier Park Foundation v. Watt, 663 F.2d 882, 885 (9th Cir.1981); see Bakke, 438 U.S. at 280-81 n. 14, 98 S.Ct. at 2743 n. 14.
 
 
 16
 Here, because the Secretary has allegedly not adopted separate and independent standards for Indians, we are unable to say with any certainty whether or not Preston would have met those standards. Thus we cannot know whether she would have been eligible to compete for the medical social worker position. Nevertheless, we think that it is clear that she presented a sufficient claim of "injury in fact" and has otherwise met the standing requirements. Preston is a bona fide applicant for the position in question. She alleges that the Secretary has violated the Indian Preference Act by failing to adopt the statutorily mandated separate and independent standards for evaluating the employment qualifications of Indians. As a bona fide Indian applicant for the position, Preston was entitled to have her qualifications measured by those standards. Assuming Preston's allegations regarding the Secretary's conduct to be correct, as we must for purposes of determining standing, we are required to conclude that Preston was deprived of a fair opportunity to be evaluated for employment in the manner provided by law. That, we hold, was sufficient for a showing of injury in fact.
 
 
 17
 The Secretary argues, however, that Preston was wholly unqualified by any rational standards, and that she lacks standing for that reason. Although the Secretary rejected Preston's employment application on the ground that she did not have a masters degree in social work, the Secretary now argues that in fact Preston had only a grade school education and no practical social work experience. Thus, the Secretary contends, Preston's showing of injury in fact has been rebutted by persuasive evidence that she would not have met the qualifications for the position no matter what separate standards for Indians had been adopted.
 
 
 18
 We need not decide whether the Secretary's legal argument would have merit if supported by the facts.[7] With the exception of the masters degree point, the record on appeal does not sustain the Secretary's assertions about the plaintiff's lack of qualifications.[8] To the contrary, there are facts in the record that suggest that had the Secretary adopted standards, it is possible that Preston might have been eligible to compete for the position she seeks.
 
 
 19
 Preston is an Indian with considerable experience with the Indian Health Service. She has been employed by that Service for many years. She submitted affidavits from two employees of the Service who stated that they believed that she would make a competent medical social worker. Her qualifications are practical rather than academic, and it is the practical aspects that the statute addresses when it requires separate qualifications for Indians. Accordingly, we conclude that the record before us does not demonstrate that Preston is wholly unqualified for the position of medical social worker, or that she would necessarily be ineligible for employment under any rational regulations adopted by the Secretary.
 
 
 20
 We conclude that the plaintiff has met the "injury in fact" part of the standing test under the APA. She has also satisfied the remainder of that test: the interests of the plaintiff, an Indian who applied for a position covered by the Indian Preference Act, are clearly within the zone of interests protected by the Act; requiring the Secretary to adopt separate and independent standards for Indians would redress an injury allegedly suffered by Preston--it would afford her a fair opportunity to be evaluated for employment in the manner provided by law. Having satisfied the test for standing under the APA, Preston necessarily meets the standing requirement of Article III.[9]THE STATUTORY QUESTIONS
 
 
 21
 Although concluding that the Secretary had not complied with the requirements of the Act, the district court held that part of the Indian Preference Act was repealed by implication. The Secretary appeals the decision that she did not comply with the Act and the plaintiff cross appeals the holding that part of the Act was repealed by implication.
 
 
 22
 A. The Statutory Language and Repeal by Implication
 
 
 23
 As enacted in 1934, section 12 of the Indian Reorganization Act, the Indian Preference Act, states that:
 
 
 24
 The Secretary of the Interior is directed to establish standards of health, age, character, experience, knowledge, and ability for Indians who may be appointed, without regard to civil-service laws, to the various positions maintained, now or hereafter, by the Indian Office, in the administration of functions or services affecting any Indian tribe. Such qualified Indians shall hereafter have the preference to appointment to vacancies in any such positions.
 
 
 25
 48 Stat. 986 (1934) (emphasis added).[10] In codifying the section in both the 1976 and 1982 versions of the United States Code, the Office of the Law Revision Counsel, ostensibly acting under statutory authority, see 2 U.S.C. Sec. 285b(2) (1982), omitted as obsolete the phrase "without regard to civil-service laws" from the act, see 25 U.S.C. Sec. 472 (1982). The Counsel based this omission on the passage of the "Ramspeck Act," Act of November 26, 1940, ch. 919, tit. I, 54 Stat. 1211 (1940). The Ramspeck Act provides, in relevant part, "[t]hat notwithstanding any provisions of law to the contrary, the President is authorized by Executive order to cover into the classified civil service any offices or positions in or under an executive department, independent establishment, or other agency of the Government."
 
 
 26
 The district court concluded that the Law Revision Counsel was correct in omitting the phrase "without regard to civil-service laws" from the version of the Indian Preference Act in the United States Code. According to the district court, that language is obsolete because it was repealed by implication by the Ramspeck Act. We disagree.
 
 
 27
 Unless Congress affirmatively enacts a title of the United States Code into law, that title is only "prima facie" evidence of the law, see 1 U.S.C. Sec. 204(a) (1982); "the very meaning of 'prima facie' is that the Code cannot prevail over the Statutes at Large when the two are inconsistent." Stephan v. United States, 319 U.S. 423, 426, 63 S.Ct. 1135, 1136, 87 L.Ed. 1490 (1943) (per curiam); see American Bank & Trust Co. v. Dallas County, --- U.S. ----, 103 S.Ct. 3369, 3375 n. 8, 77 L.Ed.2d 1072 (1983); United States v. Welden, 377 U.S. 95, 98-99 n. 4, 84 S.Ct. 1082, 1085 n. 4 (1964). Title 25 as codified has not been enacted into law by Congress. Accordingly, we must decide whether the versions of the Indian Preference Act in the United States Code and the Statutes at Large are inconsistent.
 
 
 28
 Prior to the enactment of the Indian Preference Act, application of the civil service standards had served to minimize the number of Indians employed by agencies serving Indians. See Morton v. Mancari, 417 U.S. 535, 545-51, 94 S.Ct. 2474, 2480-83, 41 L.Ed.2d 290 (1974); 78 Cong.Rec. 11729, 11731 (1934) (statement of Rep. Howard, co-sponsor of the Indian Reorganization Act). The purpose of the Act was to facilitate Indian control over Indian services. It was for that reason that Congress required the Secretary to adopt separate and independent standards for evaluating the employment qualifications of Indians. See id. By including the phrase "without regard to civil-service laws," Congress sought to emphasize its statutory mandate. When enacted, the phrase was thought to serve a useful purpose. We cannot now say that its omission is without significance. Accordingly, we hold that the version in the United States Code is inconsistent with the one in the Statutes at Large. Unless it has been partially repealed, expressly or by implication, the Indian Preference Act as it appears in the Statutes at Large must prevail.
 
 
 29
 There is no language in the Ramspeck Act that would serve to repeal explicitly any part of the Indian Preference Act. We therefore must determine whether the phrase "without regard to civil-service laws" in the Indian Preference Act was repealed by implication.
 
 
 30
 In general, "repeals by implication are not favored." Posadas v. National City Bank, 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351 (1936); see Watt v. Alaska, 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981); California Cartage Co. v. United States, 721 F.2d 1199, 1204-05 (9th Cir.1983).[11] "[T]he only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." Morton v. Mancari, 417 U.S. 535, 550, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (citation omitted). Therefore, "we must read possibly conflicting statutes 'to give effect to each if we can do so while preserving their sense and purpose.' " People of Territory of Guam v. Quinata, 704 F.2d 1085, 1087 (9th Cir.1983) (quoting Watt v. Alaska, 451 U.S. at 266-67, 101 S.Ct. at 1678).
 
 
 31
 A specific statutory provision, such as the Indian Preference Act, would not ordinarily be repealed by a generally applicable statute enacted at a later date, like the Ramspeck Act. See Morton v. Mancari, 417 U.S. at 550-51, 94 S.Ct. at 2482-83. If possible, we must interpret the later enactment, the Ramspeck Act, so that it is consistent with the earlier enactment, the Indian Preference Act. See 1A J. Sutherland, Statutes and Statutory Construction, Sec. 23.10, at 231 (C. Sands ed. 1972) ("Where the repealing effect of a statute is doubtful, the statute is strictly construed to effectuate its consistent operation with previous legislation." (emphasis in original; footnote omitted)).
 
 
 32
 Although the Ramspeck Act authorized, it did not require the President to place most executive department positions in the competitive civil service.[12] The President therefore was not compelled to place Indian Health Service positions in that service. In fact, the President has not exercised his authority under the Ramspeck Act over the Indian Health Service and the positions in the Indian Health Service, have always, at least officially, remained exempt from the competitive service. See 5 C.F.R. Sec. 213.3116(b)(8) (1982). Therefore, even if a potential conflict between the two acts did exist, no actual conflict would thus far have arisen.
 
 
 33
 Moreover, the Ramspeck Act and the Indian Preference Act may be read so that they would not be in conflict even if the President actually exercised his authority under the Ramspeck Act: positions in the Indian Health Service would be covered within the competitive civil service and civil service standards adopted for non-Indians, under the Ramspeck Act; under the Indian Preference Act, separate and independent standards for evaluating the qualifications of Indian applicants would be adopted without regard to the civil service laws; qualified Indians would be appointed to positions when openings occurred; if there were no qualified Indian applicants for a particular position--no applicants who met the separate and independent standards--then the civil service standards would be used to fill that position with a non-Indian. Because the two statutes can readily be reconciled, we are unable to conclude that the Ramspeck Act and the Indian Preference Act are in irreconcilable conflict.
 
 
 34
 Furthermore, to interpret the Ramspeck Act broadly so as to repeal by implication part of the Indian Preference Act would be inconsistent with an unquestioned canon of statutory interpretation: that statutes enacted for the benefit of Indians must be liberally construed with all doubts resolved in favor of the Indians. See, e.g., Squire v. Capoeman, 351 U.S. 1, 6-7, 76 S.Ct. 611, 614-615, 100 L.Ed. 883 (1956); Idaho v. Andrus, 720 F.2d 1461, 1464 (9th Cir.1983); Wilson v. Watt, 703 F.2d 395, 402 (9th Cir.1983). See generally F. Cohen, Handbook of Federal Indian Law 221-25 (1982 ed.) (discussing this rule as it applies to treaties, statutes, and trust agreements involving Indians).
 
 
 35
 Finally, although not expressly addressing the repeal by implication issue, the Supreme Court and the circuit courts, when interpreting the Indian Preference Act since the enactment of the Ramspeck Act, have each included the phrase "without regard to civil-service laws" in quoting that section. See, e.g., Morton v. Mancari, 417 U.S. at 537-38, 94 S.Ct. at 2476-77; Oglala Sioux Tribe v. Andrus, 603 F.2d 707, 715 (8th Cir.1979); Freeman v. Morton, 499 F.2d 494, 496 (D.C.Cir.1974); Mescalero Apache Tribe v. Hickel, 432 F.2d 956, 958 n. 3 (10th Cir.1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1195, 28 L.Ed.2d 333 (1971). Those courts obviously did not believe that the language was repealed by implication by the Ramspeck Act.
 
 
 36
 We therefore hold that the Ramspeck Act did not repeal any part of the Indian Preference Act by implication. See Funke, Educational Assistance & Employment Preference: Who Is An Indian?, 4 Am.Ind.L.Rev. 1, 32-36 (1976). Accordingly, we reverse the district court's holding that the phrase "without regard to civil-service laws" in the Indian Preference Act has been repealed. The Law Revision Counsel erred in omitting that language as obsolete; the Act reads today just as it did when originally enacted in 1934.
 
 
 37
 Despite our holding on this issue, we agree with the plaintiff that for contemporary purposes it makes little practical difference whether or not the disputed language was repealed by implication. The language, as we have said, primarily serves the purpose of emphasizing the Secretary's statutory duty; that duty would essentially be the same with or without the language; any doubt about the nature of her duty should have been resolved long ago. The district court's decision illustrates this point by holding both that the language was repealed and that the Secretary failed to comply with her statutory duty under the Indian Preference Act.
 
 
 38
 B. The Requirements of the Indian Preference Act
 
 
 39
 As we have noted, the Indian Preference Act requires the Secretary to establish separate standards for evaluating the qualifications of Indians for employment in the Indian Health Service; qualified Indians are then given preference in appointment to job vacancies. The Secretary, however, claims that the Act only requires that Indians be given preference in hiring when they are equally or more qualified than non-Indian applicants.[13] In effect, the Secretary argues that we should read the Indian preference out of the Indian Preference Act. We are not free to do so: "[w]e possess no power to rewrite legislation." United States v. McDonald, 611 F.2d 1291, 1295 (9th Cir.1980).
 
 
 40
 The Indian Preference Act is section 12 of the Indian Reorganization Act, a comprehensive act marking a significant change in federal Indian policy. See generally F. Cohen, supra, at 144-51. In interpreting the Indian Preference Act, the Supreme Court has emphasized that
 
 
 41
 [t]he overriding purpose of [the Indian Reorganization] Act was to establish machinery whereby Indian tribes would be able to assume a greater degree of self-government, both politically and economically.... One of the primary means by which self-government would be fostered and the Bureau [of Indian Affairs (BIA) ] made more responsive was to increase the participation of tribal Indians in the BIA operations. In order to achieve this end, it was recognized that some kind of preference and exemption from otherwise prevailing civil service requirements was necessary.
 
 
 42
 Morton v. Mancari, 417 U.S. 535, 542-43, 94 S.Ct. 2474, 2478-79, 41 L.Ed.2d 290 (1974) (footnotes omitted); see Oglala Sioux Tribe v. Andrus, 603 F.2d 707, 716 (8th Cir.1979); Freeman v. Morton, 499 F.2d 494, 499-500 (D.C.Cir.1974). We must interpret the language of the Indian Preference Act in light of its purpose and in light of the purpose of the comprehensive act of which it is a part. See Brothers v. First Leasing, 724 F.2d 789, 792 (9th Cir.1984); see, e.g., Rose v. Lundy, 455 U.S. 509, 517-18, 102 S.Ct. 1198, 1202-03, 71 L.Ed.2d 379 (1982); Turner v. Prod, 707 F.2d 1109, 1121 (9th Cir.1983).
 
 
 43
 The Eighth Circuit Court of Appeals has considered those purposes in invalidating conduct similar to that before us:
 
 
 44
 It is clear to us that the Bureau [of Indian Affairs' (BIA) ] use of Civil Service regulations to impose a per se disqualification upon many Indians who might otherwise be eligible to serve in the position of agency superintendent is precisely the kind of blind transference of general Civil Service principles to the particular context of Indian employment which [the Indian Preference Act] explicitly forbids. Such a transference of general Civil Service ... regulations ignores the particular conditions which affect Indian employment on the reservation, and the impact which such regulations may have on the goal of increased Indian employment and responsibility in the decisionmaking positions within the BIA.
 
 
 45
 Oglala Sioux Tribe v. Andrus, 603 F.2d at 716 (emphasis added; footnote omitted); see id. n. 10. We find the Eighth Circuit's reasoning to be persuasive.
 
 
 46
 Congress' continuing enactment of Indian preference statutes makes it clear that Congress considers Indian preferences to be an important element of federal Indian policy.[14] To adopt the Secretary's interpretation of the Indian Preference Act would undermine the federal policy of Indian self-determination enunciated in the Indian Reorganization Act as a whole, as well as in numerous other statutes. See, e.g., Indian Self-Determination and Education Assistance Act, Pub.L. No. 93-638, 88 Stat. 2203 (1975). See generally F. Cohen, supra, 180-206 (discussing the present federal policy of Indian self-determination).
 
 
 47
 The Secretary's argument is the same one made by the government over thirty years ago; it is subject to the same infirmities today as it was then:
 
 
 48
 [The Indian Preference Act] has been increasingly ignored in recent years.... The Indian Bureau continues to proclaim that Indians are accorded preference in employment. Investigation reveals that this means merely that where a number of job applicants receive the same grade on a civil service examination, the Indian applicant will be "preferred" to the non-Indian. This ignores the law which exempts Indians from civil service requirements. It also ignores the fact that Indians, born into a cultural environment that provides less preparation than does non-Indian society for academic degrees and similar civil service requirements, are inevitably handicapped in civil service competition.
 
 
 49
 Cohen, The Erosion of Indian Rights, 1950-1953, 62 Yale L.J. 348, 362 (1953) (principal drafter of the Indian Reorganization Act; emphasis added).
 
 
 50
 The Secretary also suggests that we give deference to her interpretation of the Act. We decline to do so. Although some deference generally is given to the implementing agency's interpretation of a statute, such deference is unwarranted when that interpretation is inconsistent with the statutory language or the statute's purpose. See, e.g., Bowsher v. Merck & Co., --- U.S. ----, 103 S.Ct. 1587, 1594-95, 75 L.Ed.2d 580 (1983); Morton v. Ruiz, 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974); Turner v. Prod, 707 F.2d 1109, 1115, 1121 (9th Cir.1983).
 
 
 51
 We conclude that the Secretary's interpretation is contrary both to the language and purpose of the Indian Preference Act. We therefore reject that interpretation. We hold that the Indian Preference Act requires the Secretary to adopt separate and independent standards for evaluating the qualifications of Indians for employment in the Indian Health Services--standards that give sufficient weight to the unique experience and background of Indians, including their superior knowledge of Indian needs and problems.[15]
 
 
 52
 Although we hold that the phrase "without regard to civil-service laws" is still a part of the Indian Preference Act and that the Act requires the Secretary to adopt standards for evaluating the qualifications of Indians that are separate and independent from the generally applicable civil service regulations, we do not suggest that the Secretary may not consider civil service standards at all when she is engaged in the process of formulating hiring criteria applicable to Indians. Rather, the Secretary may consider all information that may be helpful in any way. In setting the separate standards, the Secretary must of course keep in mind the strong federal policy of ensuring that health services provided to Indians are of the highest quality. See Indian Health Care Improvement Act Sec. 3, Pub.L.No. 94-437, 90 Stat. 1401 (1976) (codified at 25 U.S.C. Sec. 1602 (1982)). If, after giving full weight to the unique experience and background of Indians, as required by statute, the Secretary concludes that the only proper qualifications for a particular position are those that have already been adopted as a part of the civil service regulations, her separate and independent adoption of the same standards would not be unlawful.
 
 
 53
 C. The Secretary's Compliance with the Indian Preference Act
 
 
 54
 The Secretary, although contending that the adoption of separate and independent standards for Indians is not required by law, claims that her predecessors in fact did so. However, her predecessors all used the general civil service standards in evaluating the qualifications of all Indian applicants for all positions, as does the Secretary to this day. The Secretary presented no evidence that any civil service standards were ever separately adopted for use in connection with Indian applicants or that any decision to use any of those standards for any position was ever made after considering the unique background and experience of Indians. Rather, the Secretary simply asserts that her predecessors took all the necessary actions to comply with the Indian Preference Act. Despite the lack of any evidence supporting her rather unlikely claim, the Secretary contends that she should prevail because agency conduct is entitled to a "presumption of regularity." Moreover, she argues that the district court erred in "presuming" that she did not comply with the requirements of the Indian Preference Act. We find her contentions to be wholly without merit.
 
 
 55
 Although an agency decision is entitled to some presumption of regularity, there are limits to that rule. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 415-17, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971); Daly v. Volpe, 514 F.2d 1106, 1111 (9th Cir.1975). One limit is when the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act Sec. 10(e), 5 U.S.C. Sec. 706(2)(A) (1982); see Overton Park, 401 U.S. at 416, 91 S.Ct. at 823.
 
 
 56
 Officially, positions in the Indian Health Service are exempt from the civil service standards. 5 C.F.R. Sec. 213.3116(b)(8) (1982); see 5 id. Sec. 213.3112(a)(7) (1982). In fact, however, as the Secretary conceded in an answer to an interrogatory, no "positions in the Indian Health Service had eligibility requirements determined by any criteria other than Civil Service ... criteria since 1934."[16] Because the Indian Preference Act requires the formulation of separate and independent criteria to evaluate the qualifications of Indian applicants, the plaintiff's showing that the general civil service standards have always been used to evaluate the qualifications of all Indian applicants defeats any presumption of administrative regularity. Cf. Keogh v. Commissioner, 713 F.2d 496, 501 (9th Cir.1983) (presumption of correctness of the Commissioner's finding of a tax deficiency is overcome by strong showing of incorrectness).
 
 
 57
 "More exacting scrutiny [of agency action is] particularly useful when for some reason the presumption of agency regularity ... is rebutted." Natural Resources Defense Council, Inc. v. Securities & Exchange Commission, 606 F.2d 1031, 1049 n. 23 (D.C.Cir.1979) (citing Overton Park, 401 U.S. at 415, 91 S.Ct. at 823). Here, however, we need not rely on that rule. We conclude that the Secretary's conduct would not survive any level of scrutiny. The Secretary had access to all existing evidence that might indicate that she complied with the Indian Preference Act, and produced none. Contrary to the Secretary's contentions, the district court did not presume that the Secretary failed to comply with the Act. Rather, the district court based its finding on the facts in the record. It is obvious to us, as it was to the district court, that the Secretary has consistently and uniformly applied the generally applicable civil service standards to Indians without any consideration whatsoever of their unique background and experience. This "blind transference" of the civil service standards to Indians is precisely the practice rightly condemned by the Eighth Circuit in Oglala Sioux Tribe v. Andrus, 603 F.2d 707, 716 (8th Cir.1979).
 
 
 58
 Moreover, the unlawfulness of the Secretary's conduct has long been recognized. Numerous commentators, and even a federal commission created by Congress for the purpose of reviewing federal Indian policy, have criticized the federal government for not complying with the mandate of the Indian Preference Act. See, e.g., American Indian Policy Review Commission, Final Report 21 (1977); American Indian Policy Review Commission, Final Report of Task Force No. 9: Law Consolidation, Revision and Codification 190 (1977) (Task Force No. 9); Cohen, supra, at 362.[17] In fact, more than a quarter of a century ago, the Department of Interior conceded in an official publication that the Act "contemplates the establishment within the Interior Department of a special civil service for Indians alone. The failure of the Interior Department to complete such a system has been ascribed to lack of adequate appropriations." United States Department of the Interior, Federal Indian Law 536 (1958) (footnote omitted).
 
 
 59
 Even though on a summary judgment motion all facts and inferences must be viewed in the light most favorable to the non-moving party, see, e.g., Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc., 690 F.2d 1240, 1250 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983), conclusory allegations and reliance on the pleadings cannot alone defeat such a motion, see, e.g., Feldman v. Simkins Industries, 679 F.2d 1299, 1305 (9th Cir.1982); Angel v. Seattle-First National Bank, 653 F.2d 1293, 1299 (9th Cir.1981). There are no facts supporting, and there is no substance to, any of the Secretary's substantive arguments. To say that they are frivolous would be an act of generosity.
 
 
 60
 The district court was correct in holding that, under section 10(e) of the Administrative Procedure Act, it was a continuing abuse of discretion for the Secretary to apply the generally applicable civil service standards to Indians applying for positions in the Indian Health Service. See Oglala Sioux Tribe v. Andrus, 603 F.2d 707, 714 (8th Cir.1979); see, e.g., Kalsiki v. District Director, 620 F.2d 214, 216 n. 1 (9th Cir.1980); Song Jook Suh v. Rosenberg, 437 F.2d 1098, 1102 (9th Cir.1971). This abuse is one that has continued for decades--one which the Secretary, like her predecessors, persists in refusing to correct. Accordingly, we affirm the district court's holding on this issue.
 
 CONCLUSION
 
 61
 We hold that the plaintiff had standing to challenge the Secretary's failure to comply with the requirements of the Indian Preference Act. We also hold that the district court erred in deciding that part of the Indian Preference Act was repealed by implication. Next, we hold that the district court correctly concluded that the Act requires the Secretary to adopt standards for evaluating the qualifications of Indians for employment in the Indian Health Service that are separate and independent from the generally applicable civil service standards. Finally, we agree with the district court that the Secretary has wholly failed to comply with the requirements of the Act. Accordingly, the district court's decision is
 
 
 62
 AFFIRMED IN PART, REVERSED IN PART.
 
 SNEED, Circuit Judge, concurring:
 
 63
 I concur in Judge Reinhardt's opinion. I write only to state that it is my understanding that the Secretary is not required under the Indian Preference Act to employ Indians not qualified to perform the duties the position in question entails. The nature of those duties, however, must be fixed in conformity with the true needs of the Indian Health Service, not those of an ideal health service that happens to serve Indians.
 
 
 
 [1]
 See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); McMichael v. County of Napa, 709 F.2d 1268, 1269 (9th Cir.1983); Scott v. Rosenberg, 702 F.2d 1263, 1267 (9th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984)
 
 
 [2]
 See, e.g., Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976); City of Rohnert Park v. Harris, 601 F.2d 1040, 1048-49 (9th Cir.1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); Port of Astoria v. Hodel, 595 F.2d 467, 474 (9th Cir.1979)
 
 
 [3]
 Section 10(a) provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."
 
 
 [4]
 In Data Processing Service v. Camp ..., this Court held the constitutional standing requirement under [the APA] to be allegations which, if true, would establish that the plaintiff had been injured in fact by the action he sought to have reviewed. Reduction of the threshold requirement to actual injury redressable by the court represented a substantial broadening of access to the federal courts over that previously thought to be the constitutional minimum under this statute
 Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 38-39, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976) (citation omitted; footnote omitted).
 
 
 [5]
 Both Data Processing and Valley Forge require "injury in fact." The remainder of the Valley Forge test is necessarily met when Data Processing 's criteria are satisfied: when a person alleges that the interest which was injured by an agency action is arguably in the zone of interests protected by the statute in question and that the injury is redressable by the court (Data Processing ), that person has suffered an injury that can "fairly be traced" to agency action and "is likely to be redressed by a favorable decision" (Valley Forge )
 
 
 [6]
 Even if all of the prudential factors mentioned in Valley Forge applied to standing under the APA, Preston would still have standing to challenge the Secretary's conduct. One of those factors is the "zone of interests" criterion that has been incorporated in the APA test by Data Processing and which, we hold infra, the plaintiff has met. See id. 454 U.S. at 475, 102 S.Ct. at 760. Another is that the plaintiff must assert her own rights and interests. Id. at 474, 102 S.Ct. at 759. She does. Finally, the complaint must not be a " 'generalized grievance[ ]' ... most appropriately addressed in the representative branches." Id. at 475, 102 S.Ct. at 760 (citation omitted; footnote omitted). There is certainly no reason for Preston to address her grievance to Congress. Congress has spoken. It is the Executive which, she says, has failed to implement Congress' mandate
 
 
 [7]
 We note, however, that acceptance of the Secretary's legal argument would require the court to construct job qualification requirements in order to determine standing issues. This is a far different task than evaluating job qualification requirements that have been adopted by the Secretary. It is a task that courts are not particularly well suited to, and ordinarily will decline to perform
 
 
 [8]
 The Secretary states that the district court held that the plaintiff was not qualified for the medical social worker position. That assertion, however, is simply wrong. The district court merely recognized that the plaintiff was not "qualified" under civil service standards that were used to evaluate her qualifications
 
 
 [9]
 Because the plaintiff met the requirements for judicial review under the APA, we need not decide whether the plaintiff would also have an implied private right of action under the Indian Preference Act
 We recognize that the plaintiff, because she suffered an injury similar to that of other class members, was an appropriate representative of the class challenging the Secretary's conduct. See General Telephone Co. v. Falcon, 457 U.S. 147, 157-59, 102 S.Ct. 2364, 2371-72, 72 L.Ed.2d 740 (1982).
 
 
 [10]
 The responsibility of the Secretary of the Department of Interior to provide health services to Indians was transferred to the Secretary of the Department of Health, Education and Welfare in 1954. Pub.L. No. 83-568, 68 Stat. 674 (1954). The Secretary of the Department of Health and Human Services, as the successor agency to the Department of Health, Education and Welfare, is obligated to enforce the Indian Preference Act. See 42 U.S.C. Sec. 2001 (1976 & Supp. V 1981); S.Rep. No. 1530, 83d Cong., 2d Sess. (1954), reprinted in 1954 U.S.Code Cong. & Ad.News 2918, 2939; 42 C.F.R. Secs. 36.41-36.43 (1982)
 
 
 [11]
 We have noted, however, that "[r]epeal of Indian legislation by implication is a common congressional practice." Hopkins v. United States, 414 F.2d 464, 471 (9th Cir.1969) (emphasis added; footnote omitted). A finding that a piece of Indian legislation was repealed by implication appears to be more likely when the subsequent legislation directly pertains to Indians, rather than when the subsequent legislation is a generally applicable statute. Compare Hopkins v. United States, 414 F.2d at 471 & n. 21 (noting examples of repeal by implication of Indian legislation by subsequent Indian legislation), with Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) (holding that a general civil rights act did not repeal the Indian Preference Act by implication). Here, we are faced with a generally applicable act passed after the enactment of a specific piece of Indian legislation
 
 
 [12]
 The Ramspeck Act exempted several agencies, but not the Department of Interior or the Indian Health Service, from its provisions
 
 
 [13]
 The Secretary argues that subsequent Congressional action, such as the enactment of legislation designed to increase educational opportunities for Indians, see, e.g., Indian Health Care Improvement Act Secs. 101-106, Pub.L. No. 94-437, 90 Stat. 1401, 1402-04 (codified at 25 U.S.C. Secs. 1611-1615 (1982)), indicates that Congress agrees with her interpretation. The logic of the argument escapes us. Unlike the Secretary, we conclude that Congress viewed increased educational opportunities for Indians as a necessary supplement to the Act and an additional tool for increasing Indian employment in agencies serving Indians
 
 
 [14]
 See, e.g., 25 U.S.C. Secs. 44-47 (1982) (employment); 25 U.S.C. Sec. 274 (1982) (same); see also Morton v. Mancari, 417 U.S. at 541 & nn. 7-8, 94 S.Ct. at 2478 & nn. 7-8 (citing preferences dating back to 1834); Alaska Chapter, Associated General Contractors v. Pierce, 694 F.2d 1162, 1170 (9th Cir.1982) (upholding, in the face of an equal protection challenge, preferences to Indian-owned economic enterprises in awarding contracts to build houses for Indians under 25 U.S.C. Sec. 450e(b) (1982), which is designed to facilitate Indian economic development)
 
 
 [15]
 Given that the purpose of the Indian Preference Act is to allow Indians to control programs that serve Indians, the preference logically would apply to a variety of employment decisions besides the type of hiring involved here. See Freeman v. Morton, 499 F.2d 494 (D.C.Cir.1974) (holding that the Indian preference in the Act applies to transfers, promotions, and training as well as to initial hiring). However, because we are only presented with a claim involving a form of hiring, we need not decide the extent to which the Act applies to other employment decisions in the Indian Health Service. We recognize, though, that, after a Tenth Circuit holding that the Indian Preference Act did not require a preference for the retention of Indians when jobs within an agency are eliminated, see Mescalero Apache Tribe v. Hickel, 432 F.2d 956 (10th Cir.1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1195, 28 L.Ed.2d 333 (1971), Congress enacted legislation requiring that there be such a preference, see 25 U.S.C. Sec. 472a(a) (1982). "[T]he purpose of this provision is to overcome the adverse effects of the Mescalero decision." H.R.Rep. No. 370, 96th Cong., 1st Sess. 12 (1979), reprinted in 1979 U.S.Code Cong. & Ad.News 2068, 2077. See generally West Winds, Inc. v. M.V. Resolute, 720 F.2d 1097, 1099-1100 (9th Cir.1983) (discussing the meaning to be attributed to Congressional action in response to the judicial interpretation of a statute)
 
 
 [16]
 The Secretary, in using the generally applicable civil service standards to evaluate the qualifications of Indian applicants, apparently chose to do so despite the advice of counsel--advice based on several circuit court decisions. See American Indian Policy Review Commission, Final Report of Task Force No. 9: Law Consolidation, Revision and Codification 214 (1977)
 
 
 [17]
 Task Force No. 9 recommended
 that ... Indian Career Service standards be developed without regard to the current standards illegally being imposed by the Civil Service Commission and that they be designed to take into account the "cultural environment," "life knowledge and skill" of Indians "obtained outside of the standards of formal education" as well as other practical requirements necessary to fill various positions.
 Task Force No. 9, supra, at 191.