822 F.2d 865
 56 USLW 2116, 8 Employee Benefits Ca 2137
 Refugio FERNANDEZ; Maria Fernandez, individually and on
behalf of others similarly situated; Maria
Calderon, Plaintiffs-Appellants,
v.
William E. BROCK; Ford Barney Ford, Acting Secretary, in
his capacity as Acting Secretary of Labor; Robert A.G.
Monks, in his capacity as Administrator of the Office of
Pensions and Welfare Benefit Programs; Donald Regan, in his
capacity as Secretary of the Treasury; Roscoe L. Egger,
Jr., in his capacity as Commissioner of the Internal Revenue
Service; Teodoro Calderon, Defendants- Appellees.
 No. 86-2033.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 10, 1987.
Decided July 20, 1987.
 
 Neal S. Dudovitz, Los Angeles, Cal., Lydia Villarreal, Cal. Rural Legal Assistance, Salinas, Cal., Richard S. Kohn, Cal. Rural Legal Assistance, San Francisco, Cal., for plaintiffs-appellants.
 John P. Giraudo, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before WALLACE and POOLE, Circuit Judges, and REA,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 Four migrant farmworkers (farmworkers) appeal the district court's order granting summary judgment to the Secretary of the Treasury and other federal officials and agencies (collectively "Secretary"). The farmworkers sought an order compelling the Secretary to promulgate regulations under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001-1461, that would govern pension plans for seasonal workers. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and conclude that the farmworkers do not have standing to bring this action.
 
 
 2
 * The farmworkers have been employed for several summers as seasonal farmworkers by Kawahara, a strawberry grower. Kawahara maintains a pension plan for his employees. The farmworkers, however, have seldom been eligible to participate in the plan because they customarily were not employed at least 1,000 hours per year, the threshold set by Kawahara for participation. Moreover, the farmworkers accrued and vested few benefits because they rarely met the plan's thresholds for accrual and vesting.
 
 
 3
 ERISA does not require employers to provide employees with pension plans, but it does require employers with plans to meet ERISA's minimum standards for participating in the plan, accrual of benefits, and vesting of benefits. ERISA requires that an employee must be eligible to participate in a plan after "he completes 1 year of service," which, for ordinary workers, is defined as 1,000 hours of employment in a 12-month period. 29 U.S.C. Sec. 1052(a)(3)(A). Similarly, ERISA requires that an employee accrue benefits after a "year of participation," defined as 1,000 hours of employment in a 12-month period. 29 U.S.C. Sec. 1054(b)(3)(C). ERISA requires that benefits vest after a number of years of participation, according to varying formulas. 29 U.S.C. Sec. 1053.
 
 
 4
 The statute declares, however, that "[i]n case of any seasonal industry where the customary period of employment is less than 1,000 hours during a calendar year, the term 'year of service' shall be such period as may be determined under regulations prescribed by the [Secretary]." 29 U.S.C. Sec. 1052(a)(3)(B). The statute similarly provides for the promulgation of regulations governing the accrual and vesting periods for seasonal workers' benefits. See 29 U.S.C. Secs. 1053(b)(2)(C), 1054(b)(3)(D).
 
 
 5
 The farmworkers filed suit in district court seeking mandamus, declaratory, and injunctive relief. They contend that the Secretary has a duty to promulgate regulations under ERISA governing the participation, accrual, and vesting thresholds for seasonal workers. The Secretary moved for summary judgment on the grounds that the farmworkers lacked standing and that the statute did not obligate the Secretary to issue seasonal worker rules. The district court held that the farmworkers had standing but granted summary judgment after concluding that the Secretary's authority to issue the regulations was discretionary.
 
 II
 
 6
 A federal court's "judicial Power" extends to "Cases ... arising under ... the Laws of the United States." U.S. Constitution, art. III, sec. 2. It is not enough that a litigant claims that a violation of federal law has occurred; the litigant must have "standing" to invoke the power of a federal court. "Otherwise, the power 'is not judicial ... in the sense in which judicial power is granted by the Constitution to the courts of the United States.' " Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757, 70 L.Ed.2d 700 (1982) (Valley Forge ), quoting United States v. Ferreira, 54 U.S. (13 How.) 40, 48, 14 L.Ed. 42 (1852). In this case, we need only be concerned with those aspects of standing derived directly from the Constitution, although the doctrine of standing also encompasses several judicially imposed "prudential" requirements. See id. at 471-72, 102 S.Ct. at 758. Standing for purposes of the Constitution is present when a plaintiff suffers actual or threatened " personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984) (Allen ).
 
 
 7
 The question of standing in this case was raised as part of the Secretary's motion for summary judgment. Ordinarily, a plaintiff opposing a motion for summary judgment on this issue would have to support, with affidavits or other evidence, the factual allegations underlying the assertion of standing because such allegations must ultimately be proven for a plaintiff to prevail. See Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 115 & n. 31, 99 S.Ct. 1601, 1616 & n. 31, 60 L.Ed.2d 66 (1979) (Gladstone ). For purposes of the present appeal, however, we will " 'accept as true all material allegations of the complaint ...' as standing was challenged largely on the basis of the pleadings." Id. at 109, 99 S.Ct. at 1612, quoting Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). In reviewing a summary judgment, whether standing exists is a question of law we review de novo. Bruce v. United States, 759 F.2d 755, 758 (9th Cir.1985). The farmworkers argue that they have suffered two injuries traceable to the Secretary that will be redressed by ordering the Secretary to promulgate regulations. We consider each of these alleged injuries in turn.
 
 A.
 
 8
 The farmworkers contend that the primary injury they have suffered is the violation of their statutory rights under ERISA. To support their contention that this amounts to a cognizable "personal injury" for article III purposes, they cite language from Alvarez v. Longboy, 697 F.2d 1333 (9th Cir.1983) (Alvarez ). There, we stated that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." Id. at 1338, quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973) (dicta).
 
 
 9
 Alvarez, however, does not stand for the proposition that anyone claiming the violation of a statute has standing. To read it in that fashion would put us directly in conflict with the Supreme Court, which "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." Allen, 468 U.S. at 754, 104 S.Ct. at 3326. If this were not the case, the doctrine of standing would be inconsequential--standing would be satisfied simply by stating a claim for relief.
 
 
 10
 We read Alvarez instead as stating no more than the sound, narrow proposition that the personal injury prong of standing may be conferred by injury to real interests that have their origin in a statute, for example, injury to property rights created by statute. To have standing, a plaintiff must suffer an "actual injury," an "injury in fact," a "distinct and palpable injury." Valley Forge, 454 U.S. at 472, 475, 102 S.Ct. at 758, 760. Certainly the deprivation of many rights granted by statute give rise to distinct, palpable, actual injuries in fact. For example, interfering with someone's statutory right to receive a sum of money actually injures the person. But if the violation of "statutory rights"--a "legal" injury--does not cause an actual injury, the plaintiff is without standing. A statute cannot abrogate the minimum requirements of article III standing. See Gladstone, 441 U.S. at 100, 99 S.Ct. at 1608. Absent actual injury, a violation of a statute or even of the Constitution gives rise merely to a generalized grievance but not to standing to invoke federal judicial power. See Valley Forge, 454 U.S. at 483, 102 S.Ct. at 764.
 
 
 11
 In this case, the farmworkers' complaint alleges that they "will continue to be deprived of their rights under ERISA." They do not allege what these rights are. The complaint cites three provisions of ERISA: 29 U.S.C. Secs. 1052(a)(3)(B), 1053(b)(2)(C), and 1054(b)(3)(D). These are the three provisions which the farmworkers allege require the Secretary to prescribe regulations for participation, accrual, and vesting for seasonal industries. These provisions do not purport to grant any rights to any particular parties. The farmworkers do not allege that the mere violation of these provisions, without more, gives rise to any palpable harm to them. We conclude that the farmworkers have not alleged the existence of any statutory rights, the violation of which amounts to actual injury to them. Therefore, this claim does not meet the first prong of the test for article III standing: it does not constitute a personal injury to the farmworkers.
 
 B.
 
 12
 The second injury claimed by the farmworkers is the loss of pension benefits. Unlike their claim of injury based on violation of their alleged statutory rights, this loss constitutes a personal economic injury sufficient to satisfy the first prong of the article III standing requirement. But this alone does not provide standing. Article III power to decide this case exists only if the second and third prongs of the test for standing are also satisfied: the injury must be fairly traceable to or caused by the Secretary's failure to promulgate regulations and must be likely to be redressed by compelling the promulgation of regulations. Allen, 468 U.S. at 751, 104 S.Ct. at 3324. For purposes of our disposition of this case, we will focus on the issue of redressability. See Allen, 468 U.S. at 753 n. 19, 104 S.Ct. at 3325 n. 19.
 
 
 13
 The farmworkers' line of reasoning demonstrates the difficulty of meeting the redressability prong for article III standing. Reduced to its simplest form, they contend that their injury will be redressed by the relief they seek because, if they prevail, the Secretary must issue some regulations. These regulations may require minimum eligibility thresholds for farmworkers that are lower than Kawahara's present 1,000-hour-per-year standard. If so, Kawahara would be required to comply with the regulations' more liberal standard if he chooses to maintain an employee benefit plan. If Kawahara does so choose and does implement a plan with a lower standard, the farmworkers may be able to qualify as participants in the plan. If the farmworkers qualify, they ultimately may accrue and vest retirement benefits.
 
 
 14
 We are guided in our evaluation of the farmworkers' argument by two Supreme Court cases. In the first, Simon v. Eastern Kentucky Welfare Rights Organization, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (Simon ), a group of indigents challenged the government's granting a tax exemption to certain hospitals. The indigents asserted that the government was required to demand that the hospitals provide greater services to indigents before the hospitals could become eligible for the tax exemption. The Court held that the plaintiffs did not have standing because it was "speculative" whether the remedy sought in the lawsuit would result in the greater availability of hospital services to indigents. Id. at 43, 96 S.Ct. at 1926. The hospitals might "elect to forgo favorable tax treatment to avoid the undetermined financial drain of an increase in the level of uncompensated services." Id. Furthermore, although the complaint alleged that the hospitals received "substantial donations deductible by the donors," it was "speculative at best" to infer that the hospitals were so financially dependent on the favorable tax exempt treatment that they would admit the indigents if required to do so as a condition of receiving the tax benefit. Id.
 
 
 15
 In a second case, Allen, the parents of black children brought suit alleging that the government failed to deny tax-exempt status to racially discriminatory private schools and thereby interfered with their children's opportunity to be educated in desegregated public schools. The Court concluded that standing did not exist after observing that it was "entirely speculative ... whether withdrawal of a tax exemption from any particular school would lead the school to change its policies." 468 U.S. at 758, 104 S.Ct. at 3328. Further, it was "just as speculative whether any given parent of a child attending such a private school would decide to transfer the child to public school as a result of any changes ... made by the private school once it was threatened with loss of tax-exempt status." Id. Finally, it was also "pure speculation" whether enough schools and parents would reach decisions having "a significant impact on the racial composition of the public schools." Id.
 
 
 16
 In the case before us, we similarly conclude that it is speculative at best whether a court order compelling the Secretary to promulgate regulations will enlarge the farmworkers' pension benefits. First, ordering the Secretary to prescribe regulations for seasonal workers does not guarantee that the regulations will have thresholds meaningfully lower than Kawahara's present 1,000 hour standard. The Secretary might prescribe 900 hours, 999 hours or even 1,000 hours per year as the appropriate level for strawberry field workers. The farmworkers do not allege that the Secretary would conclude that any particular number of hours was appropriate. Second, if the Secretary does prescribe lower minimum standards for participation, accrual, and vesting, it is entirely speculative whether Kawahara will continue to maintain a pension plan when faced with the new conditions. He is not required to do so. Kawahara might elect to stop funding a pension plan altogether. Or he might offset any change in participation and accrual thresholds by raising the standards for vesting. The farmworkers do not even allege that Kawahara is likely to continue funding a pension plan when faced with the new regulations. Indeed, the farmworkers could not conceivably predict how Kawahara would react because no one can predict what the regulations might require. Third, even if Kawahara elects to maintain a pension plan with a lower eligibility standard, it is entirely speculative whether the farmworkers will meet that standard.
 
 
 17
 The farmworkers contend, however, that they have standing if the allegations in their complaint establish that the Secretary's inaction deprived them of an "opportunity" to receive benefits. They call our attention to Preston v. Heckler, 734 F.2d 1359 (9th Cir.1984) (Preston ), where we concluded that an American Indian had standing to sue the Secretary of Health and Human Services when she allegedly failed to adopt separate standards for evaluating the employment qualifications of Indians and consequently deprived the plaintiff of a "fair opportunity" to be evaluated for employment. Id. at 1366. The farmworkers contend that because the relief they request would similarly increase their "opportunity" to receive pension benefits, they have standing.
 
 
 18
 Our analysis in Preston focused on the first prong of the test for article III standing, personal injury, under the Administrative Procedure Act. We found that the plaintiff there had shown sufficient injury in fact because she had been "deprived of a fair opportunity to be evaluated for employment in the manner provided by law." Id. In the circumstances then before us, however, it was not necessary to give the issue of redressability more than cursory treatment. The plaintiff had sued the party causing her immediate injury. This party, by issuing the regulations whose absence was the sole cause of Preston's injury, could ensure that Preston received the ultimate benefit she sought: "a fair opportunity to be evaluated for employment in the manner provided by law." Id. More importantly, relief for the plaintiff in Preston was not conditioned on the discretionary behavior of any third party.
 
 
 19
 Both Allen and Simon, in contrast, involved an extra link in the chain of redressability not present in Preston. The plaintiffs in both Allen and Simon sued the IRS, a party which was not the immediate source of their injuries. By prevailing, the plaintiffs in those two cases would have been certain that the IRS would modify its regulations. But this modification would not ensure that the third parties involved--private schools in one case and hospitals in the other--would modify their behavior. That is, the plaintiffs in Allen and Simon could not predict with any degree of accuracy whether prevailing would increase their opportunity to get what they sought--desegregated schools and hospital services for the indigent respectively.
 
 
 20
 The case before us presents a situation parallel to Allen and Simon. If the farmworkers prevail, the Secretary will issue regulations governing ERISA plans for seasonal workers. But the farmworkers do not know what the regulations will say and cannot predict whether their employer will continue to offer a pension plan at all. Therefore, it is speculative whether the relief they seek will increase their opportunity to receive pension benefits. Indeed, in the present case, the chain of causation is even more attenuated because the farmworkers cannot with any degree of probability assert that the Secretary will promulgate regulations for farmworkers that differ meaningfully from the existing 1,000 hour standard.
 
 
 21
 We conclude, therefore, that the farmworkers' allegations do not establish that requiring the Secretary to promulgate regulations will increase their access to pension benefits.III
 
 
 22
 The farmworkers do not have standing to assert these claims. We therefore reverse the district court's judgment with respect to standing and remand with instructions to dismiss the action for lack of jurisdiction.
 
 
 23
 REVERSED AND REMANDED WITH INSTRUCTIONS TO DISMISS ACTION.
 
 
 
 *
 Honorable William J. Rea, United States District Judge, Central District of California, sitting by designation