Lena R. JOHNSON, Plaintiff–Appellant,

v.

Donna W. SHALALA, Secretary,
Defendant–Appellee.

No. 93–36077.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 1, 1994.

Decided Sept. 8, 1994.

---

Barbara A. Norris, Law Office of Barbara A. Norris, and Johnny O. Gibbons, Dickerson & Gibbons, Inc., Anchorage, AK, on brief for plaintiff/appellant.

Richard L. Pomeroy, Asst. U.S. Atty., Anchorage, AK, for defendant/appellee.

Before: PREGERSON, CANBY, and BOOCHEVER, Circuit Judges.

PREGERSON, Circuit Judge:

Lena R. Johnson ("Johnson"), a Native American, appeals the district court's judgment after a bench trial in favor of Donna Shalala, Secretary of Health and Human Services, in Johnson's Title VII action alleging wrongful denial of an employment opportunity under 42 U.S.C. §§ 2000e–2(a), 3(a), 5(g) (1988). We have jurisdiction under 28 U.S.C. § 1291 (1988). We affirm in part and reverse and remand in part.

## BACKGROUND

Appellant Lena R. Johnson is a Native American member of the Navajo tribe. Beginning in 1983, Johnson worked as a medical technologist at the Alaska Native Medical Center ("ANMC") in Anchorage, Alaska. ANMC is part of the Indian Health Service ("IHS"), which provides health services to Native Americans. IHS is supervised by Donna Shalala, the Secretary of Health and Human Services ("The Secretary"). ANMC's laboratory is divided into three sections: chemistry, hematology, and microbiology.

In 1989, ANMC advertised internally and nationwide, through IHS, to fill the position of microbiology lab supervisor at ANMC. The advertisement included an explanation of the IHS preference for Native Americans:[1]

1. "The policy of the IHS is to provide absolute preference to qualified Indian applicants and employees who are suitable for Federal employment in filling vacancies within the IHS." The preference is based on the Indian Preference Act, 25 U.S.C. § 472 (1988), and our interpretation of

Native Americans would be considered before any other job candidate.[2] The same qualification standards applied to preferred and non-preferred applicants. However, if one or more preferred persons applied and met the qualifications, only the applications of preferred persons would be placed before the panel from which the selection would be made.

No qualification standards separate and independent of the general civil service requirements existed for Native Americans applying to the microbiology lab supervisor position. The standards for the position were taken from the Office of Personnel Management standards. However, there were separate and independent qualification standards adopted for evaluating Native American applicants for certain other ANMC positions.

Three people, including Johnson, applied to become supervisor of the microbiology lab at ANMC. Of the three, only Johnson qualified for the IHS preference for Native Americans. Ron Jeanotte, the personnel staffing specialist for ANMC, however did not refer Johnson to Regina Smith, the general supervisor of ANMC's laboratory, for the supervisor position. Jeanotte referred the two other applicants to Smith. Applicant Dean Davidson, a caucasian male, had, among other things, been in charge of the microbiology department at Alaska's Mt. Edgecumbe Hospital for approximately seven years before joining ANMC in 1987. Applicant Carolyn Johnson, a caucasian female, had, among other things, worked at ANMC since 1977, and had served frequently as the acting supervisor of the microbiology lab. Smith selected Carolyn Johnson for the position.

Lena Johnson brought an action in federal district court against the Secretary. Johnson alleged that ANMC's refusal to promote her to the supervisor position of the micro-

biology lab amounted to racial discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2(a), 3(a), 5(g).

To support her discrimination claim, Johnson testified at trial that she possessed the requisite knowledge of the principles and techniques of microbiology. She outlined her microbiology experience as a lab technician prior to receiving her medical technology degree. She also highlighted the microbiology-related classwork that she had completed to earn her degree and the microbiology duties on her temporary duty assignments in Kotzebue and Bristol Bay while employed at ANMC. In addition, Johnson maintained that she possessed sufficient managerial and supervisory experience for the supervisor position. Johnson presented no direct evidence of discriminatory motive.

The Secretary did not dispute that Johnson belonged to a class protected by Title VII or that she applied for the microbiology lab supervisor position. However, the Secretary contended that Johnson's application failed to demonstrate that Johnson possessed a sufficient knowledge of the principles and techniques required for the position. The Secretary explained that Johnson spent most of her time in either ANMC's chemistry or hematology lab and never rotated through ANMC's microbiology lab.[3] Even though Johnson did perform some microbiology duties while working on temporary duty assignments, according to the Secretary, Johnson's assignments did not involve intensive microbiology activities. The Secretary also presented evidence that Johnson lacked the supervisory and managerial experience that the supervisor position required. Moreover, the Secretary presented evidence that the other two candidates for the microbiology

the Indian Preference Act in *Preston v. Heckler,* 734 F.2d 1359 (9th Cir.1984), discussed *infra.* (Department of Health and Human Services Memorandum).

**2.** There are only three valid reasons for eliminating an Indian preference candidate: (1) Determination that the candidate is, in fact ineligible for preference; (2) The candidate does not meet the qualification requirements, including selective factors, for the position; or (3) The candidate is

not suitable for employment in the position to be filled.

**3.** Johnson testified that the ANMC staff rotated only at the request of management. Johnson also testified that although ANMC asked for volunteers to work in microbiology, she never volunteered. The Secretary testified that Johnson never asked to rotate through the microbiology lab.

supervisor position were more qualified than Johnson.

During both her opening statement and closing argument, Johnson contended that the Secretary violated the Indian Preference Act by refusing to promote Johnson to the supervisor position. Johnson contended that the Indian Preference Act required the Secretary to adopt standards for promoting Native Americans to the microbiology lab supervisor position that were separate and independent of the general civil service requirements for the position.

The district court found that in refusing to promote Johnson to the microbiology lab supervisor position, ANMC did not violate Title VII. The court found that the Secretary "did not engage in, or commit, any unlawful employment practice in violation of Title VII...."[4]

In addition, the district court found that the Secretary did not violate the Indian Preference Act. Specifically, the district court stated that Johnson "failed to make out a prima facie case that the Secretary violated the Indian Preference Act by not *considering* whether separate and independent standards should have been established for the position of microbiology [lab] supervisor or by wrongly concluding that such separate and independent standards were not actually required by the Indian Preference Act." (emphasis added). Johnson appeals.

## ANALYSIS

We review de novo the legal questions in civil rights actions brought under Title VII and similar statutes and review for clear

error the district court's findings of fact. *Bouman v. Block,* 940 F.2d 1211, 1218 (9th Cir.), *cert. denied,* ─── U.S. ───, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991); *Atonio v. Wards Cove Packing Co.,* 827 F.2d 439, 443 (9th Cir.1987), *rev'd on other grounds,* 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). Under the clearly erroneous standard, we must accept the lower court's findings of fact unless, upon review, we are left with the definite and firm conviction that a mistake has been committed. *Sawyer v. Whitley,* ─── U.S. ───, ─── n. 14, 112 S.Ct. 2514, 2522 n. 14, 120 L.Ed.2d 269 (1992).

### 1. Johnson's Title VII Claim.

The district court concluded that the Secretary did not violate Title VII of the Civil Rights Act. The court found that the decision not to promote Johnson to become the microbiology lab supervisor was *not* motivated by Johnson's race, color, religion, sex, or national origin. Johnson contends that this finding is clearly erroneous. We disagree.

■ Johnson presented no actual evidence, either direct or circumstantial, of a discriminatory motive by anyone at the ANMC. *See Lowe v. City of Monrovia,* 775 F.2d 998 (9th Cir.1985) (Title VII plaintiff may establish prima facie case of disparate treatment by providing direct or circumstantial evidence of the employer's discriminatory motive), *amended,* 784 F.2d 1407 (9th Cir. 1986). Nor did Johnson establish a prima facie case of disparate treatment under the *McDonnell Douglas* four-part test.[5]

On the basis of our review of the entire record, we cannot say that the district court

---

4. The district court also indicated that a violation of the Indian Preference Act might constitute a violation of Title VII, where a person was deprived of an employment opportunity because of that person's race, color, religion, sex, or national origin. However, according to the court, the Secretary's decision not to promote Johnson was not motivated by wrongful discrimination.

5. A Title VII plaintiff may establish a prima facie of disparate treatment by showing: (1) that she belongs to a racial minority; (2) that she applied and was qualified for a job for which the employer was seeking applicants; (3) that, *despite being qualified,* she was rejected; and (4) that after her rejection, the position remained open and the

employer continued to seek applicants from persons of *comparable qualifications.* *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (emphasis added). Johnson did not establish that she was rejected "despite being qualified" or that the ANMC continued to seek applicants from persons of "comparable qualifications." Applicants Carolyn Johnson and Davidson appear to be *more* qualified than Johnson. Carolyn Johnson had worked at ANMC since 1977 and had served frequently as the acting supervisor of the microbiology lab, and Davidson had supervised the microbiology department at another hospital for nine years.

clearly erred by finding that the ANMC staff did not discriminate against Johnson by denying her the supervisor position. *Service Employees Int'l Union v. Fair Political Practices*, 955 F.2d 1312, 1317 n. 7 (9th Cir.) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, [we] may not reverse it even though convinced that had [we] been sitting as the trier of fact, [we] would have weighed the evidence differently.") (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)), *cert. denied*, —— U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992).[6]

### 2. Johnson's Indian Preference Act Claim.

■ Section 12 of the Indian Reorganization Act, the Indian Preference Act, provides:

The Secretary of the Interior is directed to *establish standards* of health, age, character, experience, knowledge, and ability for Indians who may be appointed, *without regard to civil service laws*, to the various positions maintained, now or hereafter by the Indian Office, in the administration of functions or services affecting any Indian Tribe. Such *qualified Indians shall hereafter have preference* to appointment to vacancies in any such positions.

Indian Reorganization Act § 12, 48 Stat. 986 (1934), 25 U.S.C. § 472 (1988) (emphasis added). The purpose for the statutory hiring preference is to afford Indians greater participation in their own self-government, both politically and economically, and to reduce the negative effect of having non-Indians administer matters that affect Indian tribal life. *Morton v. Mancari*, 417 U.S. 535, 541–42, 94 S.Ct. 2474, 2478–79, 41 L.Ed.2d 290 (1974). *See Three Affiliated Tribes v. Wold Engineering*, 467 U.S. 138, 149, 104 S.Ct. 2267, 2274, 81 L.Ed.2d 113 (1984) (statutes passed for the benefit of Native Americans are to be liberally construed, with doubtful expressions being resolved in their favor); *Tyonek Native Corp. v. Secretary of the Interior*, 836 F.2d 1237, 1239 (9th Cir.1988) (same).

■ The Secretary must ensure that the hiring practices of the IHS (including the ANMC) comply with the Indian Preference Act. "[T]he Indian Preference Act requires the Secretary to adopt separate and independent standards for evaluating the qualifications of Indians for employment in the Indian Health Services—standards that give sufficient weight to the unique experience and background of Indians, including their superior knowledge of Indian needs and problems." *Preston v. Heckler*, 734 F.2d 1359, 1371 (9th Cir.1984) (finding that the Secretary applied the general civil service standards to Native Americans without any consideration whatsoever of their unique background and experience). In this case, there were no separate and independent qualification standards for evaluating Native American applicants for the microbiology lab supervisor position at the time Johnson applied, even though such standards existed for applicants to other ANMC positions.

■ However, the Indian Preference Act does not, as Johnson contends, impose an *absolute* obligation on the Secretary to establish special standards for evaluating the qualifications of Native American applicants to every position, including, for example, ANMC's microbiology lab supervisor. The Secretary may, under the following circumstances, rely upon the civil service qualification standards for a position:

*If, after giving full weight to the unique experience and background of Indians*, as required by statute, the Secretary concludes that the only proper qualifications for a particular position are those that have already been adopted as part of the civil service regulations, her *separate and independent adoption of the same* standards would not be unlawful.

*Id.* at 1372 (emphasis added). However, the Secretary presented no evidence that she had concluded that separate and independent qualification standards were unnecessary for evaluating the qualifications of Native Ameri-

---

**6.** Even though there might have been a violation of the Indian Preference Act in this case, *see* discussion *infra*, such violation, if any was not a violation of Title VII. Johnson failed to prove that any of the Secretary's actions, including those that might have violated the Indian Preference Act, were motivated by wrongful discrimination.

can applicants. In fact, the Secretary presented no evidence that she had ever even *considered* whether special standards were appropriate for this position.

As the district court recognized, "there was no evidence to show that defendant Secretary either had or had not properly considered" whether separate qualification standards should be adopted for Indian applicants. The district judge, who is to be commended for having addressed the Indian Preference issues even though they were belatedly raised by counsel, incorrectly assumed that it was plaintiff's burden to make the requisite showing that the Secretary had failed to consider the need for separate standards.

▮ We conclude, however, that the Secretary must bear this burden under *Preston.* Once a Native American plaintiff has shown that the Secretary has not established separate and independent factors under the Indian Preference Act, the burden of production shifts to the Secretary to show that she has "conclud[ed] that the only proper qualifications for a particular position are those that have already been adopted as part of the civil service regulations," and that she has adopted them as her separate and independent standards. *Preston,* 734 F.2d at 1372. It is peculiarly within the knowledge of the Secretary whether she has considered alternative standards and rejected them in favor of the existing standards applicable to everyone. The burden of producing such evidence must be on the Secretary.

▮ Johnson's claim that the Secretary violated the Indian Preference Act may have taken the Secretary by surprise because the claim was first raised in counsel's opening statement at trial and was discussed further in counsel's closing argument. The district court in its findings of fact and conclusions of law addressed this claim extensively. Be-

cause of this and to expedite the disposition of this case, we will treat Johnson's pleadings as though they had been amended to include the Indian Preference Act claim. However, in fairness to the Secretary, we remand to the district court for further proceedings to accord the Secretary an opportunity to present evidence either (1) that separate and independent standards currently exist for evaluating Native American applicants for the microbiology lab supervisor position, or (2) that the Secretary properly considered the unique experience and background of Native Americans and separately adopted the applicable civil service standards after concluding that they were the most appropriate. If the Secretary can satisfy this burden of production, then the court should entertain evidence from both parties on the issue of Johnson's qualifications. Alternatively, if the Secretary cannot show that the unique experience of Native Americans was sufficiently taken into account, then the Secretary must consider such experience and decide whether to adopt special qualification standards or to readopt the civil service standards.[7]

We express no opinion on whether Johnson would have been eligible for the microbiology lab supervisor position if the Secretary had adopted separate and independent standards for evaluating Native American applicants, or had given full weight to the Native American experience. The Secretary's apparent failure to establish separate Indian preference standards makes it impossible for us to know whether Johnson would have been eligible for the position she sought.

## 3. Johnson's Request For Attorney's Fees.

Johnson requests an award of her attorney's fees in connection with this lawsuit,

---

7. The Secretary should keep in mind that the Indian Preference Act affords a preference to *all* qualified Native American applicants, as opposed to only those who are equally or more qualified than non-Native American applicants. *Preston,* 734 F.2d at 1369–70 (noting that an Indian with considerable practical experience with IHS not wholly unqualified for the position of medical social worker under any rational regulations

adopted by the Secretary). However, the Secretary need not adopt qualification standards which are dangerously lenient: "In setting the separate standards, the Secretary must of course keep in mind the strong federal policy of ensuring that health services provided to Indians are of the highest quality." *Id.* at 1371–72. *See id.* at 1366 (The Indian Preference Act focuses upon practical qualifications.).

pursuant to 42 U.S.C. § 2000e–5(k) (1988 & Supp. IV 1993). Section 2000e–5(k) provides:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee as part of the costs; and the Commission and the United States shall be liable for the costs the same as a private person.

In the circumstances in this case, we believe that any award of attorney's fees should await final disposition.

AFFIRMED in part; REVERSED AND REMANDED in part.